In the. Matter of the Application of CHARLES F. BANDEL, Respondent, for a Peremptory Writ of Mandamus against THE DEPARTMENT OF HEALTH OF THE CITY OF NEW YORK, Appellant.

1. PHYSICIANS — OSTEOPATHS — PERSONS, LICENSED TO PRACTICE OSTEOPATHY, ENTITLED TO BE REGISTERED AS PHYSICIANS.  A person duly licensed to practice osteopathy by the state board of regents, after passing an examination satisfactory to the state board of medical examiners, is a physician, or practitioner of medicine, within the meaning of the statute regulating the practice of medicine in this state (L. 1907, ch. 344) and of the Sanitary Code of the city of New York.  Such person is entitled, therefore, to be registered, as a physician, in the office of the clerk of the county where such practice is to be carried on, and is also entitled to be registered by the health department of the city of New York as a physician qualified to make and file the certificate and record of death required by such Sanitary Code as a prerequisite to the granting of a permit for the interment, or other disposition, of the body of a deceased person.

2. SAME — MANDAMUS — WHEN WRIT SHOULD BE GRANTED TO COMPEL HEALTH DEPARTMENT OF NEW YORK CITY TO REGISTER PRACTITIONER OF OSTEOPATHY.  Where, therefore, the department of health of the city of New York has refused to register, as a physician authorized to make and file a certificate and record of death, a duly licensed practitioner of osteopathy whose license has been duly registered by the county clerk of Kings county, such practitioner is entitled to a peremptory writ of mandamus to compel such registration.

*Matter of Bandel* v. *Dept. of Health*, 127 App. Div. 382, affirmed.

(Argued September 28, 1908; decided October 13, 1908.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered

June 12, 1908, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the defendant to register the name and address of the petitioner in the list of physicians of the city of New York in accordance with section 160 of the Sanitary Code of such city.

The facts, so far as material, are stated in the opinion.

*Francis K. Pendleton, Corporation Counsel (James D. Bell,* of counsel) for appellant. The petitioner was not a physician and, therefore, was not entitled to be registered in the bureau of records of the board of health of the city of New York under the provisions of section 160 of the Sanitary Code. (*People ex rel. P. C. S. Bank* v. *Cromwell,* 102 N. Y. 481; *Matter of Smith* v. *Board of Supervisors,* 148 N. Y. 187; *People ex rel. Corrigan* v. *Mayor, etc.,* 149 N. Y. 215; *People ex rel. Dady* v. *Coler,* 171 N. Y. 373; *Matter of M. C. College,* 190 Penn. St. 121; *People* v. *Allcutt,* 117 App. Div. 546; *People* v. *Pierson,* 176 N. Y. 201.) The provision of the sanitary ordinance requiring the registration of physicians is a health regulation and not in any sense a regulation of the practice of medicine. The petitioner having failed to show that his practice as an osteopath, whether the statute has or has not made him a physician, has been interfered with, or that the rule laid down by the board of health confining the class physicians to doctors of medicine, and issuing burial permits upon the death certificates of such practitioners alone is unreasonable or improper, has not shown himself entitled to relief. (L. 1901, ch. 466, § 1173; *People ex rel. Lieberman* v. *Vandecarr,* 175 N. Y. 440; 199 U. S. 552; *People ex rel. Lodes* v. *Department of Health,* 189 N. Y. 187.)

*Martin W. Littleton* and *Frederick Allis* for respondent. Petitioner is a physician within the definition of the Sanitary Code itself, and, therefore, entitled to registry in respondent's book of physicians. (Cosby's Code Ordinances, 160.) Petitioner is a physician within the definition of the statute, and,

therefore, entitled to registry in respondent's book of physicians. (L. 1907, ch. 344, § 1; *Grattan* v. *Metropolitan*, 24 Hun, 46; *People* v. *Allcutt*, 117 App. Div. 551; *Eastman* v. *People*, 71 Ill. App. 239; *Jones* v. *People*, 84 Ill. App. 455; *Davidson* v. *Bohlman*, 37 Mo. App. 579; *Bibber* v. *Simpson*, 59 Me. 188; *Hewitt* v. *Charier*, 16 Pick. 355; *Parke* v. *State*, 159 Ind. 231; *People* v. *Blue Mountain Co.*, 129 Ill. 370; *People* v. *Gordon*, 194 Ill. 560.) The municipal rule or regulation, under which defendant is acting, and resisting this mandamus, is arbitrary, unreasonable, unauthorized and illegal. (*Trip* v. *Cook*, 26 Wend. 152; *Howell* v. *Mills*, 53 N. Y. 332; *Rhode Island* v. *Mass.*, 12 Pet. 737; *People* v. *Board*, 158 N. Y. 158; Dillon on Mun. Corp. §§ 319, 320, 322; *Carthage* v. *Frederick*, 122 N. Y. 271; *White* v. *Carroll*, 42 N. Y. 161.)

VANN, J.    The controlling question presented by this appeal is whether a person duly licensed by the state to practice osteopathy, is a physician within the meaning of the act of 1907 regulating the practice of medicine and the Sanitary Code of the city of New York. The question arose on an application made by the respondent, a duly licensed practitioner of osteopathy whose license had been duly registered by the county clerk of Kings county, to compel the department of health of the city of New York to register him as a physician pursuant to the provisions of the Sanitary Code of that city. The statute of 1907 is entitled "An act to regulate the practice of medicine, and to repeal article eight of chapter 661 of the Laws of 1893 and acts amendatory thereof." (L. 1907, ch. 344.) It is a comprehensive act, which, by many elaborate provisions, seeks to effect the object stated in the title. It provides for the examination of applicants for a license to practice medicine by a state board of medical examiners to be appointed by the regents; specifies the preliminary education required, the period of professional study in a medical school registered as maintaining a standard satisfactory to the regents and the subjects upon which applicants are to be examined.

On receiving from the state board an official report that an applicant has successfully passed the examination, the regents are directed to issue to him a license to practice, which must be registered in the office of the county clerk of the county where such practice is to be carried on. Any person who practices medicine in this state without a license so registered is guilty of a crime. These provisions apply to all applicants. The act ignores systems or schools of medical practice and mentions none by name, except that it contains the following provisions relating to osteopathy : " 6. Where the application be for a license to practice osteopathy, the applicant shall produce evidence that he has studied osteopathy not less than three years including three satisfactory courses of not less than nine months each in three different calendar years in a college of osteopathy maintaining at the time a standard satisfactory to the regents. After nineteen hundred and ten the applicant for a license to practice under this act shall produce evidence that he has studied not less than four years including four satisfactory courses of not less than seven months each in four different calendar years in a college maintaining at the time a standard satisfactory to the regents." (§ 7, subd. 6.) This entire subdivision applies only to osteopaths, for subdivision four of the same section requires from every other applicant evidence that he " has studied medicine not less than four school years, including four satisfactory courses of at least seven months each, in four different calendar years in a medical school registered as maintaining at the time a standard satisfactory to the regents."

Section 14 relates to the construction of the statute, and the following acts among others are excepted from its provisions : " The furnishing of medical assistance in case of emergency ; or the domestic administration of family remedies ; or the practice of chiropody ; or the practice of the religious tenets of any church." It further provides " that any person who shall be actively engaged in the practice of osteopathy in the State of New York on the date of the passage of this act, and who shall present to the board of

regents satisfactory evidence that he is a graduate in good standing of a regularly conducted school or college of osteopathy within the United States which at the time of his or her graduation required a course of study of two years or longer, including the subjects of anatomy, physiology, pathology, hygiene, chemistry, obstetrics, diagnosis and the theory and practice of osteopathy, with actual attendance of not less than twenty months, which facts shall be shown by his or her diploma and affidavit, shall upon application and payment of ten dollars be granted, without examination, a license to practice osteopathy, provided application for such license be made within six months after the passage of this act. A license to practice osteopathy shall not permit the holder thereof to administer drugs or perform surgery with the use of instruments. Licenses to practice osteopathy shall be registered in accordance with the provisions of this act, and the word osteopath be included in such registration; and such license shall entitle the holder thereof to the use of the degree D. O., or doctor of osteopathy."

The act contains the following, among other definitions: "7. The practice of medicine is defined as follows: A person practices medicine within the meaning of this act, except as hereinafter stated, who holds himself out as being able to diagnose, treat, operate, or prescribe, for any human disease, pain, injury, deformity, or physical condition, and who shall either offer or undertake, by any means or method, to diagnose, treat, operate, or prescribe for any human disease, pain, injury, deformity, or physical condition. 8. Physician means a practitioner of medicine." (§ 1, subds. 7 and 8.)

Section 5 of the Sanitary Code, which is a general ordinance of the city of New York referred to in the respondent's petition and the order to show cause based thereon, provides that "The word physician shall include every person who practices about the cure of the sick or injured, or who has the charge of, or professionally prescribes for, any person sick, injured or diseased    *    *    *."

Section 160 requires that "Every physician in said city

shall register his or her name and address in the office of the Bureau of Records of said Department," meaning the department of health.

Section 167 is as follows : " No interment of the dead body of any human being, or disposition thereof in any tomb, vault, crematory or cemetery shall be made within the city of New York without a permit therefor granted by the board of health."

Section 160 further provides that " Physicians who have attended deceased persons in their last illness shall make and preserve a registry of such death, stating the cause thereof, and specifying the date, hour, place and street number of such death," as well as certain other particulars, " and shall in the report of the death of such persons specify " the same.

It appears from the record that, according to a regulation duly adopted by the board of health, no permit to bury the body of a deceased person or to otherwise dispose of the same will be issued except upon the presentation of the certificate and record of death made by a physician pursuant to the Sanitary Code.

The effect of the denial of registration as a physician to the respondent by the health department was that the body of a person who died while he was the medical attendant could not be buried upon his certificate and not until a coroner had taken charge of the case and had held an investigation.    The horror and dread of such an investigation would naturally prevent many persons from employing a doctor of osteopathy, even if they preferred that method of treatment.    The only ground upon which the health department refused to register the respondent, and the only reason advanced for opposing the motion to compel his registration, was that he is an osteopath and that an osteopath is not a physician, or, as specifically stated by the sanitary superintendent in his affidavit, that " a doctor of osteopathy by reason of his limited training and the express prohibition against his use of drugs and medicines and the use of surgical instruments, is not a physician and is not competent to diag-

nose and treat disease as a physician, nor to give a certificate of death showing the cause thereof."

We think that when the statute and the Sanitary Code are read together, it is manifest that a duly licensed osteopath is a physician within the meaning of both. The statute declares that a physician is "a practitioner of medicine" and that "a person practices medicine" who holds himself out as being able to or offers or undertakes "by *any means or method* to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition." Clearly one who practices osteopathy holds himself out and offers to diagnose and treat some of the ailments mentioned in the statute, and he is not required to treat all in order to be a physician within the meaning of the statute. He is required to study substantially the same length of time and to be examined upon the same subjects as other applicants for a license to practice, except that sanitation, surgery and gynecology are excepted from his examination and the theory and practice of osteopathy are excepted from the examination of all other applicants. Thus the statute defines and classifies licensed osteopaths as physicians. It says, in substance, that any person of mature age and sound character who has a general education satisfactory to the board of regents and a medical education satisfactory to the board of medical examiners may practice medicine, but that he must not use such agencies as he professes not to use. It gives to all licensed osteopaths the right to treat any human ailment by any means or method, except that they cannot administer drugs or perform surgery with the use of instruments. Assuming that they cannot administer antitoxin, for instance, in the treatment of diphtheria or amputate an arm hopelessly crushed, such patients as they do treat by permitted methods should not be denied the right of burial without disagreeable publicity when the medical attendant, duly authorized by law to practice medicine, is presumed to be competent to certify as to the cause of death, and there is no regulation of the health department, duly made and published, to prevent it.

The definition of a physician by the Sanitary Code is almost as comprehensive as that of the statute, and every respect in which it falls short is enlarged by the statute so as to conform thereto. Clearly a licensed osteopath, who practices osteopathy with the sanction of law, " practices about the cure of the sick or injured" within the meaning of that code. If he treats a patient afflicted with inflammatory rheumatism by the method peculiar to his system of practice, no one could more safely or intelligently certify to the cause of death in case of a fatal result. Every one has the right to employ whom he chooses to treat him for disease, but the law, in order to protect the patient, prohibits all but licensed practitioners from accepting such employment. When he employs one licensed to practice, his family, in case of his death, should not be subjected to the intense annoyance of a coroner's investigation where the law does not require it.

While, doubtless, the department of health can make stringent regulations as to the persons whose certificates of death it will accept for the purpose of a burial permit, it is sufficient to say that, so far as appears, when this proceeding was commenced it had not made any regulation which excluded licensed osteopaths from the right to give such certificates.

The statute makes doctors of osteopathy physicians. The Sanitary Code requires every physician in the city of New York to register his name with the department of health. The respondent, as a duly licensed doctor of osteopathy, was entitled to registration, and was wrongfully refused. The orders of the courts below granting a peremptory writ of mandamus to compel such registration were right and should be affirmed, with costs.

CULLEN, Ch. J. I vote for the affirmance of the order appealed from on the ground that by the act of the legislature regulating the practice of medicine in this state (Laws 1897, ch. 344) a licensed osteopath is a physician, and that by section 160 of the Sanitary Code every physician in the city of New York is required to register his name and address. To

this extent I concur in the opinion of my brother VANN.    The sole command of the writ, the issue of which is directed in this case, is to register the name and address of the relator.

I express no opinion, however, on the propriety or necessity of according the same force and effect to the certificate of an osteopath as is given to the certificates of those physicians whose right to practice is, under the statute, unlimited.    The function of a coroner's inquest is to investigate the cause of death where there are reasonable grounds for suspicion that it has been occasioned by crime or violence.    (Code Crim. Pro. sec. 773.)    One purpose and a chief purpose of accepting a physician's certificate as evidence of the cause of death is doubtless to exclude suspicion of crime.    Where death is caused by criminal means it usually occurs through external violence or from poison.    The osteopath is precluded by the law from practicing surgery or administering drugs, presumably for the reason that his education does not qualify him to practice where either drugs or surgery may be necessary.    I am, therefore, not prepared to say that the board of health might not properly require that a certificate of death, which would exclude from the cause thereof either wounds or poison, be made by a physician who is competent to judge of such matters.    It is sufficient for the disposition of this case to say that the Sanitary Code now in force draws no distinction between the two classes of physicians, but I think we should not intimate that the Sanitary Code may not properly be amended in this respect.

EDWARD T. BARTLETT, WERNER, HISCOCK and CHASE, JJ., concur with VANN, J.; CULLEN, Ch. J., concurs, in opinion, with whom HAIGHT, J., concurs.

Orders affirmed.