BANDEL v. CITY OF NEW YORK et al.

(Supreme Court, Special Term, Kings County.    August 25, 1910.)

1. HEALTH (§ 35*)—PERMITS FOR BURIAL—MUNICIPAL AUTHORITY.

The board of health of the city of New York has power to adopt a provision in the Sanitary Code that permits for burials shall be issued only by physicians having the degree of doctor of medicine, notwithstanding the public health law (Laws 1909, c. 49, § 22 [Consol. Laws. c. 45]), relating to burial permits, since section 38 exempts from the provisions of the public health law the city of New York and its Sanitary Code.

[Ed. Note.—For other cases, see Health, Dec. Dig. § 35.*]

2. CONSTITUTIONAL LAW (§ 212*)—REGULATIONS—VALIDITY.

Sanitary Code of the city of New York, providing that burial permits shall be issued only by physicians having the degree of doctor of medicine, though discriminatory when applied to one licensed to practice osteopathy under the public health law (Laws 1909, c. 49 [Consol. Laws, c. 45]), recognizing osteopathy, and declaring, in section 173, that a license to practice osteopathy shall not permit the holder thereof to administer drugs or perform surgery, because depriving him of the right to issue burial permits, is reasonable and valid.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 212.*]

Action by Charles F. Bandel against the City of New York and another to enjoin the enforcement of section 163a of the Sanitary Code of the City of New York. Demurrer to complaint sustained.

See, also, 127 App. Div. 382, 111 N. Y. Supp. 431; 122 N. Y. Supp. 1121.

Archibald R. Watson, Corp. Counsel (James D. Bell and P. E. Callahan, of counsel), for demurrer.

O'Brien, Boardman, Platt & Littleton (Martin W. Littleton, of counsel), opposed.

PUTNAM, J. The right of the osteopaths to be registered as physicians in the health department of the city of New York has been sustained. Matter of Bandel, 193 N. Y. 133, 85 N. E. 1067, 21 L. R. A. (N. S.) 49. The court also declared them qualified to give certificates as to the cause of death, but the opinion (Vann, J.) also stated:

"While, doubtless, the department of health can make stringent regulations as to the persons whose certificates of death it will accept for the purpose of a burial permit, it is sufficient to say that, so far as appears, when this proceeding was commenced it had not made any regulation which excluded licensed osteopaths from the right to give such certificates." Page 140 of 193 N. Y., page 1069 of 85 N. E., 21 L. R. A. (N. S.) 49.

Cullen, C. J., thus concluded his concurring opinion:

"It is sufficient for the disposition of this case to say that the Sanitary Code now in force draws no distinction between the two classes of physicians, but I think we should not intimate that the Sanitary Code may not properly be amended in this respect." Page 141 of 193 N. Y., page 1069 of 85 N. E., 21 L. R. A. (N. S.) 49.

Accordingly the board of health did proceed to amend the Sanitary Code by the following insertion passed March 31, 1909, and filed in the city clerk's office on April 2, 1909:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Sec. 163a. No transit permit shall be granted for the removal or burial of the remains of any person who may have died in the city of New York, unless a certificate of death, made out upon a blank form furnished by this department, signed by a physician on whom has been conferred the degree of doctor of medicine, be filed in the Bureau of Records of this department."

Plaintiff, a duly licensed doctor of osteopathy, as provided by chapter 344, Laws 1907, brings this equity suit, acting also on behalf of about 140 practicing osteopathic physicians similarly situated in the city of New York. Plaintiff avers that in a case of a patient who died May 8, 1909, under the charge of an osteopathic physician, the board of health refused to issue a transit permit, and, against the protest of the family, referred the case to the coroner, and then issued the transit permit upon the death certificate of the coroner's physician. The complaint then avers that this ordinance and the threat of its enforcement hangs as a cloud over the professional prospects of plaintiff, and other osteopathic physicians of the city, tending to destroy their business, and depriving them of all means of earning a livelihood, and that, unless it be enjoined, this plaintiff will suffer irreparable injury, and also that a multiplicity of actions will be required in order to protect the legal rights of the osteopathic physicians of said city separately. The city of New York and the board of health have demurred to this complaint.

Plaintiff contends that this sanitary ordinance is void because in violation of the fourteenth amendment of the United States Constitution and of like provisions in the Constitution of the state of New York, and is without the charter powers of defendants, and is discriminatory, unreasonable, illegal, and void. In support of this position, it is pointed out that this state officially recognizes osteopathic physicians, whose title is "Doctor of Osteopathy"—"D. O." Chapter 344, Laws 1907. The applicant for a license to practice osteopathy is to be subjected to a regular written examination, and "shall produce evidence that he has studied osteopathy not less than three years including three satisfactory courses of not less than nine months each, in three different calendar years, in a college of osteopathy maintaining at the time a standard satisfactory to the regents." Public Health Law (Laws 1909, c. 49, § 166, subd. 6). After 1910, a four-year course is prescribed. "A license to practice osteopathy shall not permit the holder thereof to administer drugs or perform surgery with the use of instruments." Section 173.

Plaintiff therefore contends that, as the state permits him to diagnose and cure living persons, he should necessarily be allowed to certify the cause of death of such patients as may die while under his treatment. "The practice of osteopathy consists principally in rubbing, pulling, and kneading with the hands and fingers certain portions of the body, and flexing and manipulating the limbs of those afflicted with disease, the object of such treatment being to remove the cause or causes of trouble." 30 Cyc. 1546, note 14. The duty of the board of health, according to modern sanitary science, is not only to keep a registration of deaths, but, by careful enumeration of the causes of deaths, to localize unsanitary conditions, and to guard against epidemics and the spread of diseases that may be locally prevalent. Since 1872 such

vital statistics have been directed under statutes of increasing rigor by England, Scotland, Germany, and various states of this country. Prentiss, Police Power, chap. 8, pp. 156, 159. The New York state statutes regarding local boards of health, which deal with smaller communities, impose very moderate restrictions as to vital statistics. The certificate of the cause of death, if no physician was in attendance, may be filled out "by some reputable person known to the officer issuing the burial or transit permit." (Public Health Law, § 22). But from these provisions were excepted the cities of New York, Brooklyn, Buffalo, Albany, and Yonkers, and the Sanitary Codes in such cities. Section 38. Obviously the public health (and its preservation by vital statistics) in New York City affect all the country with which it is brought into communication. If its board of health is inefficient, so that its vital statistics are not kept properly, a further ground is given to urge an extension of the federal powers by creating a national department of health.

While the state has wisely allowed the practice of osteopathy, it does not follow that it thereby holds out one without any practice in surgery or experience in prescribing drugs as fully qualified to certify the cause of death. Indeed, it is not certain that a board of health would be compelled to take the certificates of death of all licensed physicians in the event of an epidemic or the spread of some new and mysterious disease. Granted that the theoretical education of the osteopath is of a standard equal to that of a doctor of medicine, after he enters on his profession his practice is restricted, so that it does not appear that he can make the tests by examination of blood and tissues by which alone many diseases can be certainly detected. The Sanitary Code is discriminatory, but the discrimination is not personal and arbitrary. It is based on a limitation which the osteopath may be said to make for himself, and deprives him of no rights which he ought to exercise, consistent with the public safety.

The demurrer is therefore sustained.