## PEOPLE v. MULFORD.

(Supreme Court, Appellate Division, Fourth Department.. November 15, 1910.)

1. PHYSICIANS AND SURGEONS (§ 2*)—PRACTICING WITHOUT AUTHORITY—CONSTITUTIONALITY OF STATUTES.

Laws 1907, c. 344, § 15, making it a misdemeanor for one who, not being lawfully authorized to practice medicine and registered, does practice it, is not unconstitutional, even in the case of one practicing "suggestive therapeutics," on the ground that, his entire treatment consisting of laying on of hands and manipulation, breathing, and rubbing his hands, he can do no harm, if he does no good. [Ed. Note.—For other cases, see Physicians and Surgeons, Dec. Dig. § 2.*]

2. PHYSICIANS AND SURGEONS (§ 6*)—REGISTRATION—PRACTICING MEDICINE.

One who gives no medicines and prescribes none, performs no surgical operations, whose entire treatment consists of manipulation, of rubbing his hands together, and designates his practice as "suggestive therapeutics," is practicing medicine, within Laws 1907, c. 344, § 1, subd. 7, and section 15, requiring registration. [Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. §§ 6–11; Dec. Dig. § 6.*]

3. CRIMINAL LAW (§ 15*)—REPEAL OF STATUTE—EFFECT.

Defendant was indicted and conviction had under Laws 1907, c. 344, for practicing medicine without registration in 1908 and 1909. The act was repealed by Laws 1909, c. 49 (Consol. Laws, c. 45), taking effect February 17, 1909. The indictment was found May 5, 1909, and tried in February, 1910. *Held*, that the right to prosecute under the statute which had been repealed was saved by Statutory Construction Laws 1892, c. 677, § 31. [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1, 16–20; Dec. Dig. § 15.*]

Appeal from Allegany County Court.

James E. Mulford was convicted of practicing medicine without being registered, as prescribed by Laws 1907, c. 344, was fined $100, and appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Lee Fassett, B. B. Ackerman, and Eldyn Reynolds, for appellant. Joseph F. Rice, for respondent.

WILLIAMS, J. The judgment should be affirmed. It appeared from the evidence, without contradiction, that the defendant had an office, where he received patients, and treated them for physical ailments, and received compensation therefor; that he gave no medicine, and prescribed none; that he performed no surgical operations, and used no surgical instruments; that his entire treatment consisted of the laying on of hands, and manipulation, breathing, and rubbing his hands together; and that his treatment was beneficial to his patients. The sign in front of his office indicated that his treatment was known and designated as "suggestive therapeutics."

He had no license, and was not registered under chapter 344, Laws of 1907. Subdivision 7 of section 1 of that act provides:

"A person practices medicine within the meaning of this act * * * who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake by any means or method to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition."

Section 15 provides:

"Any person who not being then lawfully authorized to practice medicine within this state and so registered, according to law, shall practice medicine within this state, without lawful registration, * * * shall be guilty of a misdemeanor."

The defendant upon the evidence was practicing medicine within the state, as defined by this statute, and was guilty of a misdemeanor thereunder. The only contention of the appellant is that the statute is a violation of the state and United States Constitutions.

It does not seem to me any extended discussion is needed to show that the Legislature had the right to enact the provisions of this law, and that it does not violate the provisions of the Constitution. This general subject was discussed by Mr. Justice Field in Dent v. West Virginia, 129 U. S. 114, 9 Sup. Ct. 231, 32 L. Ed. 623, and among other things he used this very significant language:

"The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as in its judgment will secure or tend to secure them against the consequences of ignorance and incapacity, as well as of deception and fraud. As one means to this end, it has been the practice of different states, from time immemorial, to exact in many pursuits a certain degree of skill and learning, upon which the community may confidently rely; their possession being generally ascertained upon an examination of parties by competent persons or inferred from a certificate to them in the form of a diploma or license from an institution established for instruction on the subjects, scientific or otherwise, with which such pursuits have to deal. The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession, and attained by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty. It is only where they have no relation to such calling or profession, or are unattainable by such reasonable study and application, that they can operate to deprive one of his right to pursue a lawful vocation. Few professions require more careful preparation by one who seeks to enter it than that of medicine. It has to deal with all the subtle and mysterious influences upon which health and life depend, and requires not only a knowledge of the properties of vegetable and mineral substances, but of the human body in all its complicated parts, and their relation to each other, as well as their influence upon the mind. The physician must be able to detect readily the presence of disease, and prescribe appropriate remedies for its removal. Every one may have occasion to consult him, but comparatively few can judge of the qualifications of learning and skill which he possesses. Reliance must be placed upon the assurance, given by his license, issued by an authority competent to judge in that respect, that he possesses the requisite qualifications. Due consideration, therefore, for the protection of society, may well induce the state to exclude from practice those who have not secured a license, or who are found upon examination not to be fully qualified. * * * No one has a right to practice medicine without having the necessary qualifications of learning and skill, and the statute only requires that whoever assumes, by offering to the community his services as a physician, that he possesses such learning and skill, shall present evidence of it by a certificate or license from a body designated by the state as competent to judge of his qualifications."

This language seems to be applicable to the constitutional questions here involved, and as applicable to physicians who administer medicines and perform surgical operations in their practice of medicine would seem to be unanswerable. It is said, however, that the defendant could do no harm, if he did no good, and he should therefore have been permitted to practice his calling without interference, and

that this law, which brought him within the definition of one who practiced medicine, and was therefore prohibited from doing so without a license and being registered, deprived him of a legal right to carry on a proper business, and was a violation of the provisions of the Constitutions. A patient may often suffer as well from a failure to prescribe proper remedies, or afford surgical relief promptly, as from making improper prescriptions, or performing unskillful operations. A physician who holds himself out to treat patients for physical ills should know whether to do anything, and what to do, to relieve his patient; otherwise, he should not be permitted to practice, and impose upon the unfortunate sufferers who, like the poor, are always with us, and many of whom need the protection of the state against quacks in and out of the profession of medicine. I have no sympathy with this class of practitioners, who seek to remain outside of the control of the state, for the welfare of the people. I have no hesitation in holding this act constitutional.

The statute under which this indictment was found, and the trial and conviction had (chapter 344, Laws 1907), was repealed by the public health law (chapter 49, Laws 1909, being chapter 45, Consolidated Laws), which were passed February 17, 1909, and took effect immediately. See sections 350 and 351, and schedule of laws repealed, page 3148, Consolidated Laws. The indictment was not found until May 5, 1909, and was not tried until February, 1910. It was based upon the law of 1907, and charged the crime as committed in 1908 and 1909 down to the finding of the indictment. The proofs related to acts in 1908 and 1909 down to the time of finding the indictment. The right to so prosecute under the statute which has been repealed was saved by the statutory construction act (chapter 677, § 31, Laws 1892), but the question of constitutionality relates alone to the repealed act and not to the repealing act. The district attorney in his printed brief discusses the question only as relating to the act of 1909. The two statutes are more or less alike as to the crime charged, but it is well to remember what statute is really involved here. Judgment affirmed. All concur.