### ANDERSON v. NATIONAL CASUALTY CO.

(Supreme Court, Appellate Division, Second Department.   June 7, 1912.)

INSURANCE (§ 525\*)—SICK BENEFIT INSURANCE—ATTENDANCE BY A "REGULARLY QUALIFIED PHYSICIAN."

One licensed to practice osteopathy under Public Health Law (Consol. Laws 1909, c. 45) art. 8, and thereby authorized to attend the sick and administer anything curative save drugs, and to do what a surgeon may do without instruments, and thereby becoming a doctor of osteopathy and a physician defined by section 160, is a regularly qualified physician within a policy requiring the attendance on insured of a "regularly qualified physician"; the term being equivalent to one authorized by law to treat the sick.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1310; Dec. Dig. § 525.\*

For other definitions, see Words and Phrases, vol. 7, p. 6038.]

Jenks, P. J., and Carr, J., dissenting.

Submission of controversy on agreed statement of facts under Code Civ. Proc. § 1279, by Fortesque W. Anderson and the National Casualty Company. Judgment for plaintiff.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before JENKS, P. J., and THOMAS, CARR, WOOD-WARD, and RICH, JJ.

John F. Bradner, of Middleton, for plaintiff.
Theodore H. Lord, for defendant.

THOMAS, J. Defendant should pay the plaintiff a stipulated sum for sick benefits provided the osteopath who attended him was a "regularly qualified physician," as the policy requires, for in such case the plaintiff has performed the contract on his part. The attendant was licensed under the law of the state of New York (Public Health Law [Laws of 1909, c. 49, art. 8]), but thereby he is not permitted to administer drugs or to perform surgery with instruments. Thereby he became a doctor of osteopathy. This license places no other limitation upon his status as a physician or his service to persons in sickness. Matter of Bandel v. Department of Health, 193 N. Y. 133, 85 N. E. 1067, 21 L. R. A. (N. S.) 49. So he was regularly licensed to attend the assured when sick, to administer anything curative save drugs, and to do what a surgeon may do without instruments. The statute gave him the legal status of a physician, and that was what the policy contemplated. The policy required a person to attend the assured, licensed by the state to do so, for the cure of the disease. The term used is equivalent to one that the assured shall be attended by one authorized by the law to treat the sick. I find a definition adopted by learned writers that a "physician is one who is versed in medical science, a branch of which is surgery, and a surgeon is a physician who treats bodily injuries and ills by manual operations and the use of surgical instruments and appliances." The osteopath can use no instruments or drugs, and would not, but he is licensed to treat the injured and ailing bodily under a statute that regulates the "practice of medicine." Section 160, Public Health Law (article 8) provides:

"(7) The practice of medicine is defined as follows: A person practices medicine within the meaning of this article, except as hereinafter stated, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake, by any means or method, to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition. (8) 'Physician' means a practitioner of medicine."

Where the Legislature states what the practice of medicine is and who may practice it, the words have the meaning, a modified one perhaps, which the statute gives them.

The plaintiff should have judgment for $201.65, with interest from May 20, 1910, with costs. All concur, except JENKS, P. J., and CARR, J., dissenting.