# NEW YORK CITY MAGISTRATES' COURT—THIRD DISTRICT—FIRST DIVISION.

## December, 1912.

## THE PEOPLE v. OTTO SCHOLZ.

(1.) PRACTICING MEDICINE* — CHIROPRACTIC ADJUSTMENTS — PUBLIC HEALTH LAW, § 153.

A person who advertises "consultation and spinal analysis free" in literature entitled "New Road to Health," which contains the statement "The Chiropractic Idea—the new method of analysing the symptoms and adjusting the physical cause of disease," etc., etc., *held* to be holding out and representing that he is able to cure sickness and alleviate suffering, and does so as a business, and such person conveys thereby the impression that he practices medicine, and not being a licensed physician, is therefore guilty of a violation of section 153, Public Health Law.

(2.) SAME—CONSTITUTIONALITY OF LEGISLATIVE REGULATION.

The Public Health Law in its provisions regulating the practice of medicine is clearly within the police power of the State, and its exercise is reasonable and constitutional.

(3.) SAME—UNAUTHORIZED PERSON PRACTICING UNDER SUPERVISION OF A REGISTERED PHYSICIAN.

No physician can delegate his power and authority to another, the latter being unlicensed and unauthorized to practice medicine.

*Almuth C. Vandiver (John G. Dyer,* of counsel) for the People.

*Henry Levy,* for the defendant.

FRESCHI, City Magistrate:

Chiropractic adjustments as practiced by chiro-practors is charged to be a violation of the Public Health Law (§ 153), defining the practice of medicine as follows: "A person prac-

---

See notes, 7-4, 21-236.

tices medicine within the meaning of this article, except as hereinafter stated, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake by any means or method, to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition."

The law prohibiting the practice of medicine without a license issued pursuant to and filed in accordance with the provisions of the statute (ch. 45 of the Consolidated Laws) has been the subject of judicial interpretation and now seems to be well settled. (People v. Alcutt, 117 App. Div. 546, 26 N. Y. Crim. 560; aff'd, 186 N. Y. 517; People v. Mulford, 140 App. Div. 716; aff'd, 203 N. Y. 624; People v. Cole, 25 N. Y. Cr. Rep. 350; convicted March 30, 1912, Criminal Branch Supreme Court, Seabury, J. and a jury; Hawker v. United States, 170 U. S. Rep. 189); and the courts have held that they will not apply any hard and fast rule as to what constitutes the practice of medicine without lawful authorization and registration (People v. Christian, 122 App. Div. 842, 21 N. Y. Crim. 577; People v. Woodbury, 124 App. Div. 877, aff'd, 192 N. Y. 454).

The practice of medicine has been held to be " the exercise or performance of any act, by or through, the use of anything or matter, or by things done, given or applied, whether with or without the use of drugs or medicines, or whether with or without fee therefor, by a person holding himself or herself out as able to cure disease, with a view to relieve, heal or cure, and having for its object the prevention, healing, remedying, cure or alleviation of disease or pain." (Mee v. New York County Medical Society, vol. XXXIV, No. 136, March 15, 1906, New York Law Journal).

There is no claim by the defendant that he is. a licensed physician, but his defense is that the acts performed by him

do not constitute the practice of medicine within the contemplation of law.

At the examination it appeared from the testimony of Mrs. Frances Benzecry, the investigator for the New York County Medical Society, that she made several visits at the office of "Scholz & Scholz, Graduate Chiropractors," at No. 142 East 127th street in the city, county and State of New York, and there told the defendant that she had severe pains in the limbs, from which she claimed she suffered, and that the defendant told her he would give her a course of ten adjustments for ten dollars, to be paid in advance. She was then examined by a physician, Dr. Leopold Hibbe, and later received the "adjustments" at the hands of the defendant in the presence of the doctor. The adjustments given by the defendant consisted in rubbing that part of the head behind the ears, the neck, shoulders and pressing the vertebrae of the complainant's spine with his hands for the purpose of "removing the cause of the disease or direct and free impinged nerves," as defendant testified.

Dr. Hibbe admits he has an office with the defendant, with whom, he says, he is in partnership, dividing any profit and sharing any loss that there may be in their joint business.

On one of Mrs. Benzecry's visits to the defendant he gave her his card containing the firm name as above indicated and the additional words printed thereon: "Consultation and spinal analysis free," with the hours, addresses of City and Mt. Vernon, N. Y. offices and terms stated. He also gave her literature entitled, "New Road to Health" and the "Chiropractic Idea—the new method of analyzing the symptoms and adjusting the physical cause of disease." The back of the defendant's business card contained this matter: "If you are sick, no matter what ails you, and have tried everything in vain, take Chiropractic adjustments and get well. * * * Our work is done on the human switchboard, the spine."

This is in my opinion a holding out by the defendant as able

to cure sickness and alleviate suffering and that he does so as a business, thereby conveying to the public án impression that he practices medicine lawfully.

The defendant advertises himself as a graduate chiropractor and issues printed matter that these adjustments is a new system of drugless healing. He treats it as a science. "Chiropractic" is a newly coined word from two Greek words, which literally means doing with the hands. The Chiropractor claims that he has developed a new science for the elimination of disease, which emanate from the great nerve center, the brain.

Counsel for the defendant argues that even conceding that the defendant's business is comprehended by the statute as applied to him, the complaint should be dismissed for two reasons; 1st. His method of treatment and practice is not such as is within the power of the Legislature to regulate, restrict or prohibit; 2nd. The regulation and requirement of the act, as applied to his method of practice are arbitrary and unjust, because his business does not require the qualifications prescribed by the statute for those undertaking to practice medicine and surgery. He cites in support of this contention the case of Nelson v. State Board of Health, 108 Kan. 769, in which Judge Hobson wrote: "Services in kneading and manipulating the body are no more the practice of medicine than services in bathing a patient to allay his fever, or the inflammation of a wound." Defendant's claim is that he is on the plane of a trained nurse, and since it is a mode of treatment which absolutely excludes medicine and surgery from its pathology, he cannot be held for practicing medicine illegally.

This hardly needs argument to refute it, in my opinion. The Supreme Court in the Alcutt case, supra, refused to follow the Nelson case. I must rule that the public health law is clearly within the police power of the State and that its exercise is reasonable and constitutional. (People v. Mulford, supra.)

The defendant certainly did "treat" the investigator for a "pain" that she said she had and for an alleged "deformity" of the spine. Dr. Hibbe testified that the manipulation of the spine would relieve both the conditions and effects in Mrs. Benzecry's case. He simply showed defendant exactly what vertebrae should be adjusted.

Further, the defendant contends that he has not violated the medical law, inasmuch as he worked under the direction and supervision of a registered physician. I do not think that such fact, even were it to be found as a fact, takes the case out of the pale of the law. No physician can, in my opinion, delegate his power and authority, which is personal, to another, unlicensed and unauthorized to practice medicine. It is the policy of the State to regulate in such matters as the practice of medicine as to the qualifications of all those who may lawfully practice it as a profession. The protection of the public health is of vital importance to a community, and none but those possessing the knowledge and skill and character required by law should be allowed to exercise the prerogatives of the medical man.

It is the settled law of this State that a corporation may not employ a physician to treat the ailments of persons applying to it for medical care; nor can it practice medicine or advertise to practice medicine by and through duly licensed and registered physicians, practising under his name. (People v. Woodbury Dermatological Institute, 192 N. Y. 454, 459; People v. Dr. Weeks Medical Institute, 126 App. Div. 950. See also Matter of the Co-operative Law Company, 198 N. Y. 479, 484; Chap. 45, Art. 8, § 174 Public Health Law.)

An individual may not practice medicine nor advertise to do so under any name or designation other than his own, and may not employ registered persons to practice for him so that he may share the profits of medical practice. I believe it is unlawful for any person duly licensed as a physician or surgeon

to permit an unlicensed person to do or perform any acts which constitute the practice of medicine; and any designation by such unlicensed person tending to imply him as a practitioner of medicine is prohibited. (People v. Somme, 120 App. Div. 20.)

The testimony in this case shows that the defendant Scholz maintains an office in conjunction with a physician duly licensed to practice medicine in the State of New York, and registered to practice in the County of New York; that persons applying at the office of the defendant Scholz for treatment are received by him, their ailment is inquired into, and a treatment known as "chiropractic" is recommended to them as beneficial for their existing condition, and a fee is charged them for the giving of that treatment for the purpose of removing the cause of the sickness from which the patient is suffering; that the physical examination and diagnosis of the patient is made by a physician; that an unregistered and unlicensed person then, upon the diagnosis of a physician, attempts to and does undertake to treat, cure and remove the cause of the illness, and improve the physical condition of the patient, by giving certain thrusts called "chiropractic adjustments" to the several vertebrae of the spine; that the treatment given consists of a series of visits on the part of the patient to receive a form of treatment for the purpose of curing disease; that the unregistered person receives fees from patients and pays fifty per cent of his fees to the registered physician, who diagnoses the ailment of the patient.

As the prosecution admits, "Everyone has the right to employ whom he choses to treat him for disease, but the law, in order to protect the patient, prohibits all but licensed practitioners from accepting such employment." (Matter of Bandel v. Board of Health, 193 N. Y. 133, 140).

I question the ethics of a member of the medical profession who will lend himself in an association with a person who, although not licensed and registered to practice medicine, claims

to be entitled to carry on a practice of his alleged profession to cure and remove the cause of disease. The medical profession is one that deals with the public health and the well-being of the individual in the community and the practice of it should be, as it is, a proper matter for State regulation. Legislation upon this subject has been held to be clearly within the police power. If this were otherwise, charlatans and quacks, whose imagination seems to play a great part in adopting so-called " new ideas " for healing the sick and who claim that they can be of the greatest service to their clients in the way of cure, might freely conduct their business without being subjected to criminal prosecution, irrespective of any real injury or fatality resulting from their practice.

The evil lies in the combination which licensed physicians enter into and make with unregistered persons who, under the guise of some " new idea " or cult, attempt to cure ills and treat for the prevention of disease, and then the fee-splitting calls for condemnation.

It is to be regretted that provision is not made in the Public Health Law for some power in the State Board of Health to recommend to the State Board of Regents the revocation or suspension of a license to practice medicine, in addition to the grounds stated in section 161 of the Public Health Law, whenever in any case, made out on notice, and after hearing, a licensed physician delegates his power or perpetrates any fraud, or is guilty of any conduct tending to degrade or dishonor the medical profession.

I must hold the defendant for trial. The acts charged against the defendant constitute, in my opinion, the practice of medicine.

Ordered accordingly.