THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOHN HICKEY, Defendant.

Court of Special Sessions of the City of New York, New York County, December 13, 1935.

*John J. Bennett, Jr., Attorney-General [Sol Ullman, Assistant Attorney-General]*, for the plaintiff.

*Buhler, King & Miller [George Gordon Battle* and *John Goodrum Miller* of counsel], for the defendant.

BAYES, J. The information charges that defendant " on the 15th day of December, 1934, and habitually and continually to and including the 5th day of January, 1935, at the City of New York, in the County of New York, not being then and there lawfully authorized to practice medicine within the State of New York, and not being then and there licensed and registered as a physician according to law, unlawfully practiced medicine on Gertrude Datz, without such lawful authorization, license and registration, by unlawfully holding defendant out to said Gertrude Datz as being able to diagnose, treat, operate and prescribe for a human disease, pain, injury, deformity and physical condition of said Gertrude Datz, and by then and there offering to and undertaking for the said Gertrude Datz to diagnose, treat, operate and prescribe for a human disease, pain, injury, deformity and physical condition of said Gertrude Datz."

The information is predicated upon sections 1250, 1251 and 1263 of the Education Law relating to the practice of medicine.

The investigator, Gertrude Datz, testified that she visited defendant at his office at 112 West Seventy-second street, city and county of New York, on two occasions, December 15, 1934, and January 5, 1935; that on the first visit she informed defendant she was suffering from pain under the arch of her foot and in the calves of her legs; that defendant removed her shoe and pressed her foot under the arch with his thumb and finger until she directed him to cease because of the pain; that he also rubbed the calves of her legs for a short time. She further testified that on January 5, 1935, she again called upon defendant, who on that visit removed her left shoe and held her foot on his knee for about two minutes and pressed under the arch of her foot until she requested him to cease on account of the pain and that he did the same thing with her right foot; that defendant informed her he would give her treatment for headache and for her nerves, and took a position back of her chair and pressed his hands on her head for about five minutes and also pressed his hand around her neck and rubbed the left side of her back with the palms of his hands, starting with her neck and going down to her waist; that he did the same to her right side and down her spine, giving directions that her shoulders should be drawn back for proper breathing, placing his hands on her shoulders and pushing them back.

The People offered in evidence what was referred to as a receipt (People's Exhibit 2) bearing the name of the defendant, his telephone number and room number, the address 112 West Seventy-second street, New York city, Hotel Hargrave, the date December 15, 1934, and the words "To Mrs. Katze 25.00 full treatment Money refunded if not satisfied Paid c/o 3.00." One of defendant's regular cards was introduced in evidence giving the address, room number, telephone, office hours, and bearing the name "John Hickey" and underneath the word "Healer" and in the lower left-hand corner the words "By appointment." The investigator testified that defendant gave her a card which read as follows:

"Fallen Arches Cured
Without Surgery or Medical Applications
Walk with ease without arch supports
or Special Shoes
Results Guaranteed
John Hickey
Hotel Hargrave
112 West 72nd Street
New York City
Endicott 2-4800          Room 1028"

Defendant testified that he treated the investigator by prayer accompanied by the placing of the tips of his fingers upon the outer garments over that part of the body affected by pain and at the same time having before him a painting of Christ; that on one occasion he placed his hands under the arch of one of the feet of the investigator with slight if any pressure; that he informed her that he did not cure any one but that the cure was by the power of God, through defendant.

Defendant denied employing rubbing or massage but stated that he placed the tips of his fingers upon the outer garments of the investigator. He further testified that he was the president and pastor of the church formed in or about 1932 as The Church of God, the name being later changed to that of The First Church of the Divine Revelation and finally to The Christian Church of the Divine Revelation; that the church consists of twelve members including himself and his wife. The meetings were held at a place separate and apart from his office. Defendant offered in evidence the minutes of the meetings of the church which appear in a book written in his own handwriting. He also testified that he received fees from the investigator and others as they were able to pay.

There is very little conflict of testimony, aside from the denial by defendant of rubbing or massaging or applying more than slight pressure to the arch of the investigator's foot. We are of the opinion, however, that upon all the evidence adduced defendant's motion for an acquittal should be denied.

Defendant relies mainly upon the case of *People* v. *Cole* (219 N. Y. 98), wherein it was held that although the defendant treated the investigator by " any (some) means or method," as the word is used in the general prohibition contained in the statute (Public Health Law, § 160, subd. 7), the statute is broad enough to " permit offering prayer for the healing of disease in accordance with the recognized tenets of the Christian Science church." It was further held that the tenets of a church must be practiced in good faith to come within the exception and that where compensation is taken and the practice is apart from a church edifice or the sanctity of the home of the applicant, the question as to whether such person is within the exception should be left to the jury as a question of fact.

In the *Cole Case* (*supra*) there was no laying on of hands but the defendant covered his face with his hands and sat with his head partially bowed for about fifteen minutes in prayer. The Court of Appeals held, however, that this constituted a treatment within

the meaning of the statute as appears from the opinion at page 109 as follows:

" We are of the opinion that the defendant did ' treat ' the investigator by ' any (some) means or method,' as the word is used in the general prohibition contained in the statute.

" The general and comprehensive definition of a person who practices medicine has an express exception. The descriptive words are preceded by the phrase ' except as hereinafter stated.' The exception concededly refers to the words in section 173 of the Public Health Law as follows: ' This article shall not be construed to affect  *  *  *  the practice of the religious tenets of any church.' The exception includes every person in the practice of the religious tenets of any church and it is not in any way in conflict with the Federal or State Constitution. The language quoted from said section 173 is not in any sense an affirmative license. It is, we repeat, an exception to the general prohibition. Whether the practice of the religious tenets of any church should have been excepted from the general prohibition against the practice of medicine unless· the practitioner is registered and authorized so to do, or whether the exception should be continued therein, is a question for the legislature and not for the courts."

It should be stated that sections 160–174-b of the Public Health Law were repealed by section 3 of chapter 85 of the Laws of 1927, in effect March 7, 1927, and re-enacted without change, except such as were made necessary by the State Departments Law, as article 48 of the Education Law. The case of *People* v. *Cole* (219 N. Y. 98) was decided in 1916, so that section 160, subdivision 7, sections 161, 173 and 174 of the Public Health Law are now sections 1250, subdivision 7, 1251, 1262 and 1263, respectively, of the Education Law.

This brings us to a consideration of the evidence in the light of subdivision 7 of section 1250 of the Education Law (formerly subdivision 7 of section 160 of the Public Health Law) which reads as follows: "A person practices medicine within the meaning of this article, except as hereinafter stated, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake, by any means or method, to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition."

The words " except as hereinafter stated " refer to the exception contained in clause 8 of subdivision 1 of section 1262 of the Education Law, viz., " the practice of religious tenets of any church." It is to be observed that the definition involves, *first,* a holding

out as being able to diagnose, treat, etc., and *second,* an offering or undertaking by any means or method to diagnose, treat, etc., or prescribe for any human disease, pain, etc.

The court is of the opinion that defendant's card which he gave to the investigator, which bears the name of the defendant, the address, telephone and room number, with the words "Fallen arches cured; Without surgery  *  *  *  or special shoes; Results guaranteed," together with the treatments testified to by defendant, constitutes a holding out as being able and an offer or undertaking to diagnose, treat, etc., in violation of section 1250 of the Education Law.

This brings us to the question, although not necessary to this decision, as to whether defendant comes within the exception contained in section 1262, "the practice of the religious tenets of any church." It may be pointed out that in the present case as well as in the case of *People* v. *Cole (supra)* the treatment was for a consideration.

As to the character and extent of the treatments, the testimony of the investigator finds corroboration in the admission of defendant that he applied pressure, even though slight, to the arch of the foot and placed the tips of his fingers against the outer garments of the body. The admissions of defendant, including People's Exhibit 3, above referred to, justify the acceptance of the People's version as to the character and extent of the treatments. If we are correct in this, defendant cannot be exempted by the claim that he was engaged in the practice of the religious tenets of a church. Moreover, as to the church in question, the evidence supports the view that it is but a cloak or screen for the practice of medicine by defendant in violation of the statute. This view is borne out by an examination of the church minutes, its almost negligible membership, defendant's experience and background, and the manner in which he mingled the operations of the church and his office practice. Upon a consideration of all the evidence we are unable to escape the conclusion that defendant's practices are in violation of the law.

Accordingly, the court denies defendant's motions for an acquittal and finds the defendant guilty as charged in the information.

WALLING and NOLAN, JJ., concur.