In the Matter of CARROLL K. DAVIS, Respondent, against BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Appellant.

Third Department, March 31, 1954.

*Nathaniel L. Goldstein, Attorney-General (Henry S. Manley and Wendell P. Brown* of counsel), for appellant.

*Isidore Levine* for respondent.

HALPERN, J. This is an appeal by the Board of Regents from an order of the Special Term annulling the board's determination suspending the license of the petitioner-respondent to practice medicine for one year. The order of annulment was granted upon the ground that the board's decision had been improperly influenced by matters outside the record brought to its attention by its Committee on Discipline.

We have come to the conclusion that the order of the Special Term must be reversed and the determination of the Board of Regents confirmed.

First of all, the Special Term should have transferred the case to the Appellate Division for review in the first instance, pursuant to the terms of subdivision 5 of section 6515 of the Education Law. That subdivision provides that a proceeding under article 78 of the Civil Practice Act for the purpose of reviewing a determination revoking or suspending the license of a licensed practitioner should be made " returnable before the appellate division of the third judicial department ".

The fact that the petitioner in this case raised only questions of law under subdivisions 4 and 5 of section 1296 of the Civil Practice Act did not affect the duty of the Special Term to transfer the case to the Appellate Division. The specific provision of section 6515 of the Education Law is controlling as against the general provisions of section 1296 of the Civil Practice Act.

As the Special Term pointed out, in dealing with the question of the duty to transfer the case, the petitioner did not raise any question as to the sufficiency of the evidence to warrant the finding by the board that he was guilty of the misconduct charged. The petitioner raised only two procedural points, one that the notice of hearing did not specifically call attention to the fact that the petitioner had the right to have subpœnas issued by the Committee on Grievances on his behalf in accordance with subdivision 4 of section 6515 of the Education Law, and the other that the Regents' Committee on Discipline had improperly mentioned evidence of subsequent misconduct on the part of the petitioner in its supplemental report to the Board of Regents.

The first point was correctly brushed aside by the Special Term as inconsequential. The notice of hearing did not men-

tion the right to subpœna witnesses but it specifically stated that the petitioner had the right to produce witnesses and to cross-examine witnesses. While the petitioner's counsel insisted on being recorded merely as a friend, he was present throughout the hearing and he was unquestionably aware of the right to subpœna witnesses. There is nothing to indicate that any evidence that could have been produced on behalf of the petitioner was not produced because the notice did not specifically inform him that subpœnas could be issued on his behalf.

We believe that the second procedural point, upon the basis of which the Special Term was persuaded to annul the determination, is also without merit. The charges were that the petitioner, who was engaged in the practice of plastic surgery had advertised for patronage in violation of paragraph (d) of subdivision 2 of section 6514 of the Education Law and that he was guilty of fraud and deceit in the practice of medicine in violation of paragraph (a) of subdivision 2 of section 6514 by reason of the fact that certain of the advertising was done under an assumed name. The initial hearing was held before a subcommittee of the Medical Grievance Committee. The petitioner admitted the principal charge, that of advertising for patronage in violation of the statute. His only plea was one in mitigation, that others were guilty of similar offenses. The subcommittee and the Medical Grievance Committee found that the charges had been sustained and recommended that the petitioner's license to practice medicine be suspended for three months. The case was thereafter referred to the Regents' Committee on Discipline and an oral argument was had before that committee. After hearing the petitioner, the Regents' Committee on Discipline sustained the findings made by the Medical Grievance Committee and concurred in its recommendation that the petitioner's license be suspended for a period of three months.

The Board of Regents was apparently not satisfied with the extent of the punishment recommended and it sent the case back to the Regents' Committee on Discipline for a supplemental report. The Regents' Committee submitted a supplemental report, reviewing the case in greater detail and arguing that "While the recommended three months' period of license suspension may well have appeared to the Board of Regents to be too short", a longer period of suspension should not be imposed because this was the first case in a campaign directed against what was a rather widespread practice. It was in the course of the supplemental report that the Regents' Committee on Discipline referred to an objectionable advertisement by the

petitioner in the telephone "Red Book" subsequent to the period covered by the charges. The committee stated that it mentioned the matter in its report solely "as a warning to Respondents [the petitioner and one other] for the future" and that the matter "cannot affect that question" [the measure of discipline] "because it is not covered by the charges in these proceedings". The purpose of the Regents' Committee on Discipline in mentioning the matter at all is obscure; perhaps, the committee thought that mentioning it in its formal report would make more effective the oral warning which it had given the petitioner against any recurrence of misconduct in the future. As the committee itself recognized, it had no bearing upon the subject matter of the supplemental report; it would have been wiser if the committee had chosen some other way to formalize its warning.

In any event, the mention of this matter in the supplemental report is not an adequate ground for invalidating the entire proceeding. Obviously, it did not influence the decision by the Board of Regents as to the petitioner's guilt of the principal offense originally charged. It could not have influenced its decision on that subject because there never was any real issue as to his guilt. It clearly appears that the decision to accept the findings of the Medical Grievance Committee and of the Regents' Committee on Discipline as to the petitioner's guilt had already been taken when the supplemental report was asked for, and that the only remaining question was the extent of the punishment.

The Board of Regents subsequently decided to impose a period of one year's suspension, but there is nothing to indicate that the allegedly improper matter in the committee's report, had any bearing upon the board's decision. The Board of Regents apparently had the longer period in mind at the time when it asked the committee for a supplemental report. The committee adhered to its original view but it was apparently unable to persuade the board to alter its intention.

Furthermore, even if we assume that the board's determination as to the measure of punishment was influenced by the reference to the petitioner's subsequent misconduct, this was not improper. It is the regular practice of the courts, after a determination of guilt has been made, to receive extraneous information of all sorts from probation officers and others as to the prior and subsequent conduct of the defendant as bearing upon the extent of punishment. Administrative agencies cannot be denied similar latitude.

Finally, even if we assume that it was improper to consider the subsequent misconduct of the petitioner in determining the extent of the punishment, the courts have no power to interfere. The action of the board in determining the extent of the punishment is wholly discretionary. Neither the result nor the considerations upon which it was based, can be reviewed by the courts (*Matter of Barsky* v. *Board of Regents,* 305 N. Y. 89, 99).

The order appealed from should be reversed and the determination of the Board of Regents confirmed, with $50 costs.

FOSTER, P. J., BERGAN, COON and IMRIE, JJ., concur.

Order reversed and the determination of the Board of Regents confirmed, with $50 costs.