Harry B. Frank, J.
This is a motion by plaintiff for summary judgment dissolving defendant Allied Medical Clearing House Incorporated, and restraining and prohibiting defendants from enforcing contracts or agreements procured in violation of laws cf the State of New York, and for the appointment of a receiver of the property of the corporate defendant.
In the complaint, the Attorney-General charges defendants with engaging in repeated fraudulent and illegal acts and practices in violation of the Education Law (§ 6501, subd. 4; § 6513, subd. 2, par. a); Banking Law (art. 9) and Insurance Law (§ 41), and that defendants have otherwise demonstrated persistent fraud or illegality in the carrying on, conducting and transacting of business from the time of Allied’s incorporation and continuing to date, and constitute a public nuisance. Additionally, the Attorney-General seeks the dissolution of Allied, a permanent injunction and a receiver.
By written stipulation the action against defendant Mitscherlich has been discontinued.
The officers who have controlled Allied from its inception are Albert E. Vaughn, president and director, and Lilo Vaughn, its secretary, treasurer and director.
Allied is in the business of extending credit to clients of attorneys in personal injury actions for medical-legal evaluation and therapeutic care. These clients, generally, cannot afford to pay for medical expenses requisite for developing a personal injury action. In the furtherance of its business, Allied has circularized the medical and legal professions. It could not continue in business without the co-operation of individual members thereof.
*491 Albert E. Vaughn negotiates and enters into contracts on Allied’s behalf with persons injured in accidents and with plaintiffs in personal injury actions, and their attorneys. Litigants are referred by their lawyers to Allied, are interviewed by defendant Albert E. Vaughn who inquires into the circumstances of the accident and the extent and scope of the injuries of said litigants, and determines whether the case is meritorious and there is a good chance of recovery by the litigant.
If Allied decides to accept the case, the litigant signs a written instrument entitled ‘1 Assignment of Judgment and Settlement, Associated Payment Contract and Security Interest ”, and there is an integrated document, the “Attorney Consent and Contract ”, signed by the litigant’s lawyer.
By means of the “ Assignment of Judgment and Settlement, ” etc., Allied agrees to pay for the litigant’s therapeutic care including hospital services, X rays, specialists, consultations with medical-legal evaluation, medical reports and professional testimony, in return for an assignment of that portion of the litigant’s recovery in the personal injury action equal to the total of the bills incurred by the litigant through Allied. In addition, the litigant must pay a “handling charge” of 6% per annum on his total of invoices.
Under the contractual provisions of the “Assignment of Judgment and Settlement,” etc. Allied can refuse to assume any invoices incurred, if in its appraisal of the monetary value of the case further expenses are not warranted.
Under the rules of the Appellate Division, attorneys cannot finance medical and related matters for their clients. That role is referred to Allied. If Allied accepts the case and assumes the obligation, then the attorney signs that portion of the contract entitled “Attorney Consent and Contract” to subordinate his fee to Allied’s lien on the litigant’s recovery.
It is clear that lawyers are the main source of Allied’s business. Through Allied, the medical aspect of the cases is financed, which might be a circumvention of the Rules of the Appellate Division of the First and Second Departments.
At the time of the signing of the 6 ‘ Assignment of Judgment and Settlement ”, the client generally is without the effective representation of counsel. Attorneys who recommend Allied to their clients assume a dual role, to detriment of clients, not fully advised on the effect of the contract, against any recovery, and the obligation thereunder. A great number of these clients have language difficulties, and are of limited education and experience. These are the people who by circumstances were *492 susceptible to the suggestions that they take advantage of Allied’s services.
The individuals and organizations providing services through the offices of Allied, i.e., doctors, hospitals, laboratories, surgical supply houses, etc., are tied to Allied through an instrument entitled “ Contract and Novation ” whereby they agree to pay Allied 25 % of their fees.
Through the “Contract and Novation ”, Allied is substituted for the litigant as the obligor of the doctor, hospital or surgical supply house and agrees to pay only when Allied obtains its share of the moneys recovered by the litigant in the personal injury action, or within a reasonable time after final disposition of the litigant’s claim or action.
By virtue of the instrument designated “ Contract and Novation ’ ’, Allied has at its disposal a panel of physicians and related medical, services, all under contract with Allied. The individuals and organizations providing service for the litigant agree that Allied retains 25% of their fees billed to litigant. Thus while the 6% handling charge is assessed to the litigant on the basis of 100% of the invoices run up by him, Allied has paid nothing. In any event, Allied is only paying out 75% of the amount of these invoices, while retaining 25%. There appears an excess of interest over 6%. In addition, because of the length of time it presently takes to try or settle a personal injury case, it is conceivable that unsuspecting litigants in some cases would have to pay as much as 30% interest based on 100% of the service charges incurred by them.
It appears obvious that, since doctors and other individuals who render service to litigants might have to wait years to receive payment, Allied clients have to pay higher fees than ordinary patients.
Although Allied procures medical and related services, and agrees to pay for them, the litigant never relinquishes his obligation to Allied.
Allied selected the physician for the litigant and in many cases Allied sent the litigant for X rays prior to examination by a doctor. These X rays were taken at laboratories or hospitals under contract with Allied and these institutions billed litigant through Allied’s affiliate, known as “ The X-Ray Center”. Even when litigants had taken X rays at a hospital following their injury, Allied sent them for additional X rays..
It was Allied’s decision, after receiving doctors’ reports, whether it would take the.expense of specialists? treatment. This depended-on Allied’s evaluation .of the ease.- This in the court’s opinion was the practicing-of medicine without a license.
*493 The litigant was generally kept in the dark as to his medical or related expenses. Litigant’s attorney’s representation was ineffective in the litigant’s dealings, because of Allied’s stance as go-between for litigant, doctor and" lawyer. There was little communication between doctor and lawyer. The latter received doctors’ reports and bills through Allied. It was only upon closing of a successful action that litigants were aware of the expenses.
Under this system, controlled by Allied, litigants paid more as Allied’s patients than as strangers to the doctors. In addition, where the case could stand the expense, there were unnecessary treatments, excessive X rays, and excessive charges with Allied controlling the choice of doctors and specialists through its extension of “ credit ” therefor.
Allied’s extraction of a handling charge of 6% is in reality an interest charge in excess of 6% per annum, because Allied does not advance any money but charges interest on the-amount of credit provided by it, and, although it charges interest based on 100% of the invoices to the litigant, it is not responsible for payment of more than 75% incurred by the litigant. This is a violation of the Banking Law.
Further, Allied, not licensed as an insurer, acts as an insurer since it guarantees payment to the providers of medical and medical-legal services. Allied pays only when the litigant is unsuccessful in his shit or Allied fails to receive reimbursement from the litigant. Under Allied’s certificate of incorporation there is no authority for any of the defendants to function as a doctor, a money lender or insurer under the laws of the State of New York.
Allied denies that it is guilty of any impropriety in this operation of its business. It maintains that it renders essential services to persons and organizations that utilized its services; that Allied, by absolute assumption of the obligation to pay instead of the client, saves such persons and firms the labor, aggravation and the expense of following up each case.
Allied further denies that it provided any medical-legal evaluation, therapeutic services or any auxiliary service for any client; that its sole function with respect thereto was that of an organization which made it possible for the client to receive necessary services which the client could not afford, by assuming responsibility for the bills rendered to the client.
However, despite defendants’ denials, the record is clear that defendants have perpetrated a fraud upon the public by concealment and suppression of vitally important facts; is charging interest at an unlawful rate; that Allied has provided unlicensed *494 therapeutic care and medical advice for litigants involved in personal injury action; and that:Allied has- unlawfully insured payment to those providing the services to litigants under the Allied operations, and charging the providers of such services 25% of their fees.
The motion is granted.