Sidney H. Asch, J.
This is an application by the Attorney-General for an order enjoining defendants during the pendency of the action from conducting business as an abortion referral agency, engaging in certain fraudulent practices and otherwise transferring property of the defendant corporation and for a further order appointing a temporary receiver.
Simultaneously with the making of this application the Attorney-General has commenced an action for a permanent injunction, to judicially dissolve the corporate defendant and in connection therewith the appointment of a receiver to liquidate the assets of the corporate defendant and make restitution to clients who have utilized defendants’ services.
Defendant, Abortion Information Agency (hereinafter called A.I.A.) is a domestic corporation engaged in the business of providing counseling and information to women regarding abortions and acts as a referral agency providing hospital and medical services for same.
*826 In substance, the Attorney-General contends that the corporate defendant acts as a commercial broker in the sale of medical and hospital abortion services, that such activity contravenes the public policy of this State, that such business activity exceeds A.IA.’s corporate powers, that the defendants arranged with various hospitals and doctors a fee schedule for the admission of patients seeking abortions referred by the defendant corporation; that A.T. A. is engaged in the practice of medicine in violation of paragraph (b) of subdivision 2 of section 6514 of the Education Law, that the corporate defendant is engaged in fee splitting in violation of the Education Law, and that the corporate defendant’s activities violate section 40 of the Insurance Law. In addition, defendants are accused of false advertising and otherwise misrepresenting the nature of services offered and the fees charged.
In opposition defendant admits that it is in the business of counseling women and providing information with regard to obtaining abortions, and that it also acts as a referral agency. However, defendants claim that the characterization by the Attorney-General of its business activities is a distortion since information is also supplied to women offering alternatives to abortions, such as prenatal clinics, adoption agencies, psychiatric and religious counseling services.
If a woman does seek an abortion defendants claim that they then refer the individual to duly accredited and licensed hospital facilities where abortions are performed by accredited obstetricians and gynecologists, and that a flat fee is charged according to the type of abortion performed and the available hospital facility. Defendants further contend that the type of procedure to be performed is determined by a physician and that the fee charged is not unconscionable in view of the fact that any additional expenses incurred by the patient, such as laboratory tests, in the course of her hospital stay are absorbed by the corporation. In this connection defendants argue that no evidence is presented which demonstrates that the total fees charged by the defendant are higher than the cost or charges made by any hospital facility in New York City or other profit or nonprofit organizations providing the same service.
With respect to alleged deceptive advertising practices defendant contends that clients are informed as to the basis of the referral fee and registration fees charged, that an itemization of expenses is given on request to clients after defendant has received billing from the hospital and doctor, and that the comprehensive fee complained of has since been reduced. Moreover, defendants contend that the comprehensive fee including *827 all referral charges is no more than a client would have to pay if she went directly to the hospital. Defendants also deny the existence of any agreement with physicians or hospitals regarding their respective fees.
With respect to the charge of unlawfully practicing medicine, defendants assert that the questions they ask clients are the same inquiry that Would be made by any hospital admitting clerk.
It is not disputed that subdivision 12 of section 63 of the Executive Law prohibits “ repeated fraudulent or illegal acts ” and “ persistent fraud or illegality in the carrying on, conducting or transaction of business ”. Both the Executive Law and the Business Corporation Law empower the Attorney-General to apply for an injunction restraining continuance of the proscribed business activity, and in this connection, specific authority is provided for the judicial dissolution of a corporation where the corporation procures its information through fraud, has exceeded its authority, conducted business in a fraudulent manner or abuses its powers in contravention of the public policy of this State (Business Corporation Law, § 1101).
Essentially, the central issue involved in this proceeding is not whether the transgressions complained of constitute a failure to perform obligations to individuals, but whether the wrong herein charged appears to be done to the people of this State (People v. Albany & Susquehanna R. R. Co., 57 N. Y. 161, 167). In this regard a corporation charter will be subject to forfeiture whenever its transgressions threaten the welfare of the people (19 C. J. S., Corporations, § 1663).
As to the charge of deceptive advertising practices under the circumstances presented, the court feels that there has been an inadequate showing made to warrant the drastic relief sought. Whether the corporate defendant does in fact provide counseling services or has created fictitious departments are issues of fact which cannot be resolved on the basis of conflicting affidavits. Nor can the charges of concealing information from customers as to the extent of defendants’ referrals’ fee be sustained on the papers now before the court. It therefore follows that the charge of misrepresentation as to the fee charged for the services offered cannot at this juncture form a basis for affording the drastic provisional relief sought by the Attorney-General.
However, apart from the alleged charge of unconscionableness of the referral fees and the possible illegal engagement by the corporate defendant in an insurance business, defendants are engaged in activities which in the final analysis require judicial condemnation.
*828 The Attorney-General argues that the maintenance of this referral agency for abortions is in of itself against public policy. Defendants feebly meet this argument contending that there is nothing inherently wrong with acting as commercial agency for the purpose of referring patients to hospitals. At best this is an oversimplification of the nature and extent of business activity engaged in by defendant A.I.A.
If the defendant were solely engaged in dispensing information as to available facilities in this State of obtaining abortions such activity would not be violative of our public policy. Indeed, such would be in accord with the pronounced liberalized abortion policy of this State (Penal Law, § 125.05, subd. 3). However, it is not denied that defendants in fact contracted the doctor and the hospital facility for the specific purpose of performing abortions. In this arrangement the corporate defendant charges a comprehensive fee out of which A.I.A. pays the doctor and the hospital.
Generally, a broker is defined as one who is engaged by others for a commission to negotiate contracts relative to property with the custody of which he has no concern (12 C. J. S., Brokers, § 1). The defendant here acts on a middleman commission basis, bringing together the women seeking an abortion and the instrumentality through which such is effectuated. In this regard ‘ ‘ the public policy of the State is opposed to the [practice] of acting as an intermediary or broker in the sale of professional services ” (1946 Opns. Atty. Gen. 314, 315). In Matter of Co-operative Law Co. (198 N. Y. 479, 484) the court stated, ‘ ‘ A corporation can neither practice law nor hire lawyers to carry on the business of practicing law for it any more than it can practice medicine or dentistry by hiring doctors or dentists to act for it ” [citing cases]. Here the corporate defendant hires and pays doctors for performing abortions as well as providing and paying for the particular hospital facility. Neither the doctor nor the hospital bills the patient. All billing is sent to the corporate defendant. In an analogous situation the courts have upheld the right of the Attorney-General to secure injunctive relief and the appointment of a receiver (see People v. Allied Medical Clearing House, 55 Misc 2d 489, affd. 29 A D 2d 919, mot. for lv. to app. den. 21 N Y 2d 645). It should also be noted that the pattern of such activities also exceeds the corporate powers set forth in AJ.A.’s certificate of incorporation.
Such practices also constitute fee splitting which on its face violates section 6514 of the Education Law. Section 6514 (subd. 2, par. [f]; L. 1967, ch. 680, § 23) prohibits in a very broad sense *829 the division of fees and covers the payment to another for referring a client to a physician.
With respect to the claim that defendant was practicing medicine, subdivision 4 of section 6501 of the Education Law (L. 1947, ch. 820) defines the practice of medicine as one 11 who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake, by any means or method, to diagnose, treat, operate or prescribe for any human disease * * * or physical condition”. Defendant Abortion Information Agency’s activities in this regard fall within the purview of the statutory definition, because a determination was made by their own employees as to the type of abortion to be performed. Defendants’ employees would ask the client a prepared set of questions and based upon the answers given would inform the client of the type of abortion to be performed and the fee charged therefor (see People v. Cole, 219 N. Y. 98,108; People v. Hickey, 157 Misc. 592).
Similar proscriptions relating to unauthorized practice, advertising for patronage, fee arrangements and other unprofessional conduct permeate the law regarding such healing sciences as: dentistry (Education Law, § 6613, subd. 1, pars, e, g, h; Matter of Cherry v. Board of Regents, 289 N. Y. 148; Matter of Bell v. Board of Regents, 295 N. Y. 101; Matter of Dr. Bloom Dentist, Inc. v. Cruise, 259 N. Y. 358, remittitur amd. 260 N. Y. 571; cf. Education Law, § 6612, subd. 4, par. d; Insurance Law, art. IX-C, 1954 Opns. Atty. Gen. 184); chiropractic (Education Law, § 6911, subd. 1, pars, c, g); psychology (Education Law, § 7607, subd. 1, pars, b, e, f); X-ray technician (Public Health Law, § 3510, subd. 1, pars, [a], [d], [k], [1]); New York City Administrative Code, § 561-4.0); podiatry or chiropody (Education Law, § 7011, subd. 1, pars, b, f to j); Education Law, § 7010, subd. 1; veterinary medicine (Education Law, § 6712, subd. 1, pars, c to f).
The instant application is directed at the corporate defentiautIt seems significant to note that a physician participating in such unlawful corporate enterprise may be in danger of revocation or suspension of his license, other professional disciplinary action, or even criminal prosecution under sections 6513 and 6514 of the Education Law.
The grounds for such sanctions include: ‘ ‘ aiding and permitting another, who is unlicensed, to practice medicine (Matter of La Roe v. Board of Regents, 260 App. Div. 978); unlawful fee splitting in connection with the furnishing of medical care, services, or supplies (Education Law, § 6514, subd. 2, par. [f] ); *830 Matter of Weiner v. Board of Regents, 3 A D 2d 113; Matter of Sherman v. Board of Regents, 24 A D 2d 315, affd. 19 N Y 2d 679; 1945 Opns. Atty. Gen., 192; cf. Penal Law, § 440; fraud or deceit in the practice of medicine (Education Law, § 6514, subd. 2, par. [a]); solicitation for patronage by advertising (Education Law, § 6514, subd. 2, par. [e]; Education Law, § 6513, subd. 1, par. c); Matter of Davis v. Board of Regents, 283 App. Div. 591, affd. 307 N. Y. 786; Matter of Weiss v. Board of Regents, 284 App. Div. 1005, app. dsmd. 308 N. Y. 810; Matter of Day v. Board of Regents, 266 App. Div. 888; Reid v. Medical Soc. of County of Oneida, 156 N. Y. S. 780, affd. 177 App. Div. 939; New York City Administrative Code, § 561-4.0; Counsel Education Dept., 1967, 7 Ed. Dept. Eep. 159; (cf. Education Law, § 6514, subd. 2, par. [d]); and other unprofessional conduct (Education Law, § 6514, subd. 2, par. [g]; Stolz v. Board of Regents, 4 A D 2d 361; Ann. 163 A. L. E. 909; Ann. 109 A. L. R. 1459).
The enactment of the law which was designed to make abortion services more available to women who desired such help, certainly was not designed to vacate the many and salutary provisions of the Education Law, as well as the other statutory specifications, designed to maintain the professional practice of medicine. Such an abortion of the legal rules regulating the rendition of medical services would, indeed, be throwing out the baby with the bath water. It would be improper on a motion of this nature, for the court to resolve the contradictory factual contentions of the parties, but this is not necessary. The corporate activities concededly engaged in by defendant constitute a flagrant violation of the law and mandate intervention.
The law which sought to emancipate women from servitude as unwilling breeders, did not intend to deliver them as helpless victims of commercial operators for the exploitation of their misery.
This 'pattern of unauthorized activity warrants the granting of injunctive relief as well as the appointment of a receiver. Accordingly, defendants are. restrained from carrying on, conducting or transacting business as a referral agency for performing abortions, from engaging in the sale or offering for sale the services of any physician or hospital facility, from collecting or soliciting any fees in connection therewith directly or indirectly, from splitting any fee or disbursing any fee or charges to any hospital or physician, or ^ any manner engaging in the practice of medicine; and frein transferring or otherwise disposing of corporate assets or property. .