William C. Beewhaat, J.
In a 15-count indictment defendant is charged with the illegal practice of medicine, unlawfully holding himself out as being able to practice medicine, and illegally using the title ‘ ‘ physician ’ ’. The charges stem from the fact that defendant, who is not a licensed physician, allegedly engaged in the practice of acupuncture.
The statutes governing this prosecution provide, in pertinent part: “ Anyone not authorized to practice under this title who practices or offers to practice or holds himself out as being able to practice in any profession in which a license is a prerequisite to the practice of the acts * * * shall be guilty of a class A misdemeanor.” (Education Law, § 6512.)
‘ ‘ The practice of the profession of medicine is defined as diagnosing, treating, operating or prescribing for any human disease, pain, injury, deformity or physical condition.” (Education Law, § 6521.)
“ Only a person licensed or otherwise authorized under this article shall practice medicine or use the title ‘ physician \” (Education Law, '§ 6522.)
“ Anyone not authorized to use a professional title regulated by this title, and one who uses such professional title, shall be guilty of a class A misdemeanor.” (Education Law, § 6513.)
By this motion defendant attacks the constitutionality of the statute defining the practice of medicine and, should its validity be upheld, calls upon the court to determine whether the practice of acupuncture is the practice of medicine. Additional grounds asserted for the dismissal of the indictment include: (1) that it does not state with sufficient particularity the facts constituting the alleged crimes; and (2) that there was insufficient legal evidence adduced before the Grand Jury. Finally, defendant moves to suppress statements made by him to members of the New York City Police Department and to agents of the Attorney-General.
The constitutional attack is two pronged: first, that the statute is overbroad, and, second, that it is vague. The general power of the State under its police powers to regulate the right to practice medical arts in New York has been upheld against prior constitutional challenge. In People v. Mulford (140 App. Div. 716), the court held that when the defendant engaged in the practice of what he advertised as “ suggestive therapeutics ”, *269 his treatment consisting of laying on of hands and manipulation, breathing and rubbing his hands together in the treatment of physical ailments without giving or prescribing medicine, he was practicing medicine within the definition of the statute; and that the Legislature had the right to enact such provisions of law and that same do not violate the provisions of the Constitution. (See 45 N. Y. Jur., Physicians and Surgeons, § 9, and cases cited therein; 61 Am. Jur. 2d, Physicians, Surgeons, etc., § 9 et seq.; see, also, Collins v. Texas, 223 U. S. 288.)
The particular statute at issue has a long history. Early statutes regulating physicians used the expression " practice physics or surgery ”. (L. 1872, ch. 746; L. .1880, ch. 513; L. 1887, ch. 647, as amd. by L. 1890, ch. 500.) The first broadened definition of the practice of medicine appeared in chapter 344 of the Laws of 1907. In People v. Ellis (162 App. Div. 288), this department held in 1914 that the appellant’s acts, consisting of diagnosis followed by rubbing and pressures on the human joints for treatment of a condition that appellant attributed to alignment of the spine through displaced vertabrae, came within the statutory definition of the practice of medicine. The statute has been re-enacted up to the present time in virtually identical form and has furnished the basis for numerous prosecutions (State of New York v. Abortion Information Agency, 69 Misc 2d 825, affd. 37 A D 2d 142, affd. 30 N Y 2d 779; Chiropractic Assn. of N. Y. v. Hilleboe, 31 Misc 2d 554, affd. 16 A D 2d 285, affd. 12 N Y 2d 109 [treatment by chiropractic]; People v. Cole, 219 N. Y. 98 [treatment by prayer, interposition with view of treatment without laying of hands]; People v. Hickey, 157 Misc. 592, affd. 249 App. Div. 611 [pressure treatment by placing the finger tips on the outer garments of the investigator]; People v. Mulford, 140 App. Div. 716, supra [suggestive therapeutics]; People v. Allcutt, 117 App. Div. 546 [mechane neural therapy] ; see, for compilation of cases in other jurisdictions, 70 C.J.S., Physicians and Surgeons, § 10 et seq.). It appears that no direct attack has been made upon the constitutionality of the particular language at issue. (Cf. People v. Mulford, supra; see, also, Engel v. Gerstenfeld, 102 Misc. 97, revd. 184 App. Div. 953.) While the court nisi prius has the power to declare statutes unconstitutional, it should do so only in the clearest case. Further courts are loathe to overthrow the action of the Legislature in the exercise of its police power if the Legislature acts reasonably, or to declare void a remedial statute frequently re-enacted over a long period of time. (See McKinney’s Cons. *270 Laws of N. Y, Book 2, Constitution, Constitutional Interpretation, § 46.)
The thrust of the “ overbroad ” contention is that the statute has what defendant terms a ‘ ‘ dragnet ’ ’ application. While the State may constitutionally regulate certain activities, it may not do so in an unnecessarily broad manner thereby impinging upon fundamental personal liberties. Thus, defendant points to the number of successful prosecutions and the more limited number of unsuccessful prosecutions (People v. Lehrman, 251 App. Div. 451, affd. 276 N. Y. 479 [electrolysis]) to demonstrate that the statute exceeds constitutional perimeters. Constitutionality is not, however, inversely proportionate to the number of successful or unsuccessful prosecutions. That the statute is broadly worded was noted by the Court of Appeals in People v. Cole (219 N. Y. 98, 108, supra): “ The language of the statute is very general. It bears evidence in itself that the words were chosen for the express purpose of prohibiting, except upon registration and authorization of the practitioner * * *
every means and method that could thereafter he used or claimed to he used to relieve or cure disease and infirmity ”. (Emphasis supplied.) It should be noted, however, that section 6527 of the Education Law provides inter alia: “ 4. This article shall not be construed to affect or prevent the following: a. The furnishing of medical assistance in an emergency; b. The practice of the religious tenets of any church ’ ’. Thus, many of the hypothetical instances raised by the defendant wherein he asserts that the actions taken would subject the actor to criminal sanction (e.g., athletic trainer during a football game treats an injured player; a cab driver who delivers a child in his taxi, etc.) would appear to be resolved by the application of one of these exceptions. The court does not find that the statute is overbroad nor does it perceive of any unwholesome ‘ ‘ chilling effect ” engendered by it.
A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application 'may be declared unconstitutional. This court cannot, however, agree with defendant’s assertion that this statute does not direct the actor, with reasonable specificity, toward the conduct to be prohibited. There is a strong presumption that a statute duly enacted is constitutional. In order to declare a law unconstitutional, its invalidity must be demonstrated beyond a reasonable doubt. (See People v. Pagnotta, 25 N Y 2d 333; Matter of *271 Van Berkel v. Power, 16 N Y 2d 37, 40.) Defendant has not met this burden.
As previously noted, defendant also urges as grounds for the dismissal of the indictment (1) a failure to state facts with sufficient particularity, and (2) the insufficiency of the evidence adduced before the Grand Jury. Although the indictment utilizes the language of the statute, taking cognizance of the unusual circumstances here presented, it is sufficient. With respect to the second ground, after examination of the Grand Jury minutes, the court finds that there was insufficient legal evidence adduced to sustain the 2d, 3d, 5th, 6th, 8th, 9th, 11th, 12th, 14th and 15th counts of the indictment, and, accordingly, those counts of the indictment are dismissed with leave to the District Attorney to resubmit.
Defendant’s motion to suppress is denied. The only statement which the Attorney-General intends to introduce was made at a different time and place than the statements which defendant asserts were obtained in an illegal manner. This disposition is without prejudice, however, to a new motion should the Attorney-General serve notice that any other statements are to be used.
The counts remaining in this indictment are those accusing defendant of the illegal practice of medicine. Squarely presented, then, is a question of novel impression — whether or not acupuncture is the practice of medicine. It is necessary for the proper determination of this issue to inquire into the nature of acupuncture. Counsel for the defendant has provided this court with a memorandum of law which in considerable detail traces the history, philosophy and techniques of acupuncture. In this treatise the court is informed substantially as follows:
The earliest accounts of Chinese acupuncture date back to the third or fourth century B. C. The word “ acupuncture ” is derived from the Latin words “ acus ”, the needle, and “ puncture ”, a pricking, and means “ a puncturing of bodily tissue ”, Acupuncture is based on an energy concept. Traditionally, Chinese medicine is based on the concept that man is a microcosmie image of the universe and subject to identical laws. The immutable course of nature is thought to be guided by Tao, the Way. The two forces through which Tao acts were named Tin and Tang. Tin, also called the female element, possesses all the “ negative ” energy qualities, and Tang, the male element, possesses the “ positive ” energy qualities.
*272 la the human body the vital essence termed “ ch’i ”, consisting of a harmonious mixture of Yin and Yang is believed to be conveyed through twelve pairs of main ducts, plus two trunk ducts which run in the front and back midline of the body. These ducts, known as organ or median vessel meridians, are associated with a special inner organ function, process or system. The meridians emerge at the surface of the body at a certain .number of designated points where vital energy can be predictably influenced by manipulation. These are known as acupuncture points. By palpating six pulses on each wrist, the acupuncturist is able to read the condition of the twelve organs and to determine the existence of energy imbalances, deficiencies, excesses, blockages and escapes. In response to individual symptoms specific acupuncture points are then chosen for piqure. Out of the 670 points of the meridians, 31 are forbidden to piqures, and there are other points where a piqure is dangerous and may only be made after special precautions have been taken.
The piqure is made by the use of acupuncture needles. Those currently in general use are required to be very fine, hairlike, flexible, unbreakable and stainless. The lengths vary according to the usage; the long needle (three inches or more) is used for deep piqure in the region of the buttocks; the medium needle (two to three inches) is used for the deep points of the limbs and trunk; and the short needle (one to two inches) or the very short needle (less than one inch) is used on superficial points. The piqure, once placed, must remain there for a determined time at a determined depth.
The piqures are inserted and manipulated in accordance with the “ great law of Pu-Hsieh and the rule of Shou Fa ”, which constitute the keystone of acupuncture, its procedure being to supply energy where it is lacking or to calm or retire an excess of energy where such excess is present. Ideally, it restores the equilibrium of the Yin and Yang and as a consequence the person’s state of health is restored.
Acupuncture includes cauterizations, referred to as “a burning therapy ’ ’ for which laws were established about a thousand years ago under the Northern Sung Dynasty. Sixty-six points are forbidden to cauterization, but are permitted to piqures. Six points are forbidden to both.
The application of cauterizations and piqures or insertions of needles into the human body is performed in the practice of acupuncture and is necessarily a form of treatment intended to relieve the patient of pain or other physical trouble by a method and theory quite different from the treatment provided by the *273 members of the medical profession with which we are familiar. Because it is so different the argument is made that control of the practice of acupuncture was not contemplated in the laws, the violation of which is charged to this defendant, while at the same time defendant argues that the very same laws are so broad and embrace so many activities that they are unconstitutional.
As can be seen from the nature of the treatment in the instances briefly described in cases above cited, a statute intended to regulate, limit or control the diagnosis and treatment of ailments must necessarily be broad enough to include the gamut of those known, whether or not recognized and even those not yet conjured.
Defendant contends that only practices which constitute Western allopathic medicine come within the purview of the statute. Allopathy is defined as the treatment of disease by remedies that produce effects different from or opposite to those produced by the disease. Defendant argues that Chinese acupuncture is not Western allopathic medicine and therefore does not come within the contemplation of the practice of medicine as proscribed in the Education Law. The court does not read the statutes that way. There appears little doubt that acupuncture differs from allopathic medicine in its philosophy, practice and technique. Assuming the accuracy of the premise, the court cannot agree with the conclusion. To say that the statute is so limited by the failure of the Legislature to envision the practice of acupuncture in this State is an implausible interpretation. The court finds nothing in the pertinent provisions of the Education Law which exclude, directly or by implication, any manner of diagnosis or treatment which is not embraced within the definition of “ Western allopathic medicine ”. On the contrary, and to put it more positively, the definition of medicine as set forth in section 6521 of the Education Law specifically includes the ‘ ‘ diagnosing, treating, operating or prescribing for any human disease, pain, injury, deformity or physical condition.” Whether actions constitute the practice of medicine is dependent upon the facts and not upon the name of the procedure, its origins or legislative lack of clairvoyance.
“ The term ‘ diagnosis ’ is derived from the Greek prefix ' dia ’, meaning between, and ‘ gignoskein ’, meaning to discern. It is, in modern terminology, a ‘ sizing up ’ or a comprehending of the physical or mental status of a patient. It is the conclusion itself rather than the procedures upon which the conclusion is based which constitutes a diagnosis per se. No particular *274 language need be used and no disease need be mentioned, for the diagnostician may make or draw his conclusion in his own way.” (People v. Zinke, 169 Misc. 573, 578.)
In defendant’s lengthy and informative memorandum of law, from which the court has gleaned its familiarity with the subject of acupuncture and the respects in which it differs from the Western allopathic medicine, scrupulously avoided is the fact that a patient is necessarily involved and that such patient seeks treatment, not out of curiosity but only because he is suffering pain or other physical ailment; that before he, the patient, can expect the anticipated relief from the harmonious workings of the dual forces of Tin and Tang, a diagnosis must be made, if not to recognize a “Western” disease, then at least to determine the existence of a disharmony brought about by the disequilibrium of Tin and Tang; that a proper diagnosis or determination necessarily involves an expert ability to palpate the 12 pulses in order to read the condition of the 12 organs and thus determine which of the 12 meridians must be used to convey the Tin and Tang to the seat of disharmony with the object of restoring the vital essence of “ch'i”, which is described as an harmonious mixture of Tin and Tang. Following such diagnosis or determination, requiring skill and practice, and in response to “individual symptoms ”, specific points must be chosen for needling, that is, the insertion and manipulation of needles, the insertion referred to as a “ piqure ”. Further judgment must be used to determine the need and the locale for cauterization. Such decisions, whether or not defendant would agree that they be called ‘ ‘ diagnosis ’ ’ or the result of diagnosis, and the application of cauterization and insertion of needles, in this court’s opinion, constitute the practice of medicine as defined in the statutes. The performance of one or more of such functions comes within the statutes.
In the view of this court the statutes under consideration were designed to prevent such conduct as the indiscriminate application of cauterization and the sticking of needles into human beings by unskilled and unlicensed practitioners. The defendant’s argument that the application of such treatment by knowledgeable practitioners actually effects cure and that the charges against him are therefore ill-founded is entirely untenable. No matter how skilled, even a thoroughly qualified physician may not practice without being licensed to do so.
Finally, defendant seeks dismissal of the indictment in the interests of justice. From the foregoing, it should be mani *275 festly clear that the public welfare and the interests of justice will be best served by preventing the unlicensed and unregulated conduct described and charged against this defendant. This court has no opinion as to whether the application of the principles of acupuncture does good or harm to anyone. It may be, in fact, that acupuncture as a separately licensed healing modality is an idea whose time has come. It is not, however, for this court to declare its arrival. That task is for the Legislature.
Except as to that part of the motion which is specifically granted in the foregoing opinion, the same is in all respects denied.