William J. Burke, J.
This is an appeal from a judgment of conviction of illegal storage of alcoholic beverage as a result of a plea of guilty to a violation of subdivision 1 of section 96 of the Alcoholic Beverage Control Law. The appellant was sentenced on October 20, 1976 to a conditional discharge.
Briefly the facts indicate that the instant charges arose out of the execution of a search warrant issued upon allegations that the defendant was involved in the illegal sale and storage of alcoholic beverages. The defendant-appellant was arrested and arraigned, however, on the charge of storing liquor without a license.
The appellant attacks the constitutionality of subdivision 1 of section 96 of the Alcoholic Beverage Control Law upon due process grounds in that it is alleged that it is too vague to give notice of the prohibited conduct, nor does it provide a uniform basis for its enforcement.
It must be noted at the outset that this court, and for good reason, is mindful of the circumspection and limitations properly imposed upon courts in dealing with the constitutional validity of any statutes. The appropriate rule was succinctly stated in Matter of Van Berkel v Power (16 NY2d 37, 40) that legislative enactments are: "supported by a presumption of validity so strong as to demand of those who attack them a demonstration of invalidity beyond a reasonable doubt”. (See, also, People v Pagnotta, 25 NY2d 333; People v Morehouse, 80 Misc 2d 406; People v Farr, 80 Misc 2d 250; People v Amber, 76 Misc 2d 267; People v Einhorn, 75 Misc 2d 183; House of Spirits v Doyle, 72 Misc 2d 1036.)
Having said this, how do we then determine if the defendant meets this heavy burden. The Court of Appeals in People v Lang (36 NY2d 366, 369), in citing the case of People v Grogan (260 NY 138) stated: "this court discussed the criteria by which statutes are to be evaluated in determining whether or not they are a legitimate and permissible regulation of conduct. Judge Crane expressed this principle by stating that (p 145): 'Statutes which create crimes must be definite in *394 specifying conduct which is condemned or prohibited. They must afford some comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements. "Laws which create crimes ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid”. [Cases cited].’ ”
The court goes on to cite People v Bell (306 NY 110, 113) and quotes therefrom (p 370): " '[i]t is a familiar canon of construction that the intent with which statutes have been enacted "is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and the remedy in view”. [Cases cited.]’ ”
The court in Lang (supra) refers to the case of People v Pagnotta (25 NY2d 333, supra). In that case, the Court of Appeals stated (p 337): " 'a statute must be sufficiently definite to give a reasonable man subject to it notice of the nature of what is prohibited and what is required of him.’ ” (People v Byron, 17 NY2d 64, 67; Lanzetta v New Jersey, 306 US 451.)
Moreover, in order to be upheld as constitutional, a law which places some restriction upon an individual’s freedom of action in the name of the police power must bear some reasonable relation to the public good. (People v Bunis, 9 NY2d 1, 4.) A statute which fails to distinguish between innocent conduct and an action which is calculated to cause harm may not be sustained.
Now after having briefly stated some of the various and diverse rules of construction needed in the consideration of the constitutionality of statutes, a look at the subject statute is in order.
Subdivision 1 of section 96 of the Alcoholic Beverage Control Law states in pertinent part as follows: "(1) No alcoholic beverage shall be stored or kept in or upon any premises which shall not be duly licensed as provided for in this chapter”. (Emphasis added.)
The appellant contends that the statute appears to forbid even the temporary storage of a minute quantity of liquor in a citizen’s home and that the context of the section in article 7 "Special Permits” and its title, "Warehouse permit” does not afford a basis for a clear distinction between prohibited and permissible conduct.
This court has read the subject language numerous times *395 and believes that the Legislature did not intend to require all private citizens to obtain permits to store, or keep, alcoholic beverages in their homes when their motives for so doing were purely noncriminal, and for the consumption of these liquids by themselves and their guests.
However, the section clearly indicates that any premises that stores alcoholic beverages which is not duly licensed, as provided for in this chapter, must obtain a "Warehouse permit”. Therein lies the confusion.
A private residence which is not utilized for any activity covered by the Alcoholic Beverage Control Law cannot obtain a license because it, or its occupants, are not involved in activities requiring the issuance of a license. Therefore, the private residences would, in fact, be unlicensed and in accordance with the literal meaning of the language of subdivision 1 of section 96, a permit would be required to store or keep alcoholic beverages, regardless of amounts, and regardless of the intent of the one who has such beverages in their homes. Thus, absent such permit, the storage of any amount of alcoholic beverage would be illegal.
The purpose and object of the Alcoholic Beverage Control Law, as a whole, is set out in section 2, wherein it is stated in part: "It is hereby declared as the policy of the state that it is necessary to regulate and control the manufacture, sale and distribution within the state of alcoholic beverages for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to law. It is hereby declared that such policy will best be carried out by empowering the liquor authority of the state to determine whether public convenience and advantage will be promoted by the issuance of licenses to traffic in alcoholic beverages, the increase or decrease in the number thereof and the location of premises licensed thereby, subject only to the right of judicial review hereinafter provided for. It is the purpose of this chapter to carry out that policy in the public interest. The restrictions, regulations and provisions contained in this chapter are enacted by the legislature for the protection, health, welfare and safety of the people of the state.”
In furtherance of this stated purpose, a whole series of numerous classifications of licenses and permits have been set out in the act to accomplish full control by the State over any and all activities relating to the manufacture, sale and distri *396 bution of alcoholic beverages, as well as activities incidental thereto.
Thus, while the purpose of the act is broad in its objectives, it is specific in the sense that it is intended to control one area of our society that is included in the manufacture, sale and distribution of alcoholic beverages, by controlling those who must obtain licenses and permits to traffic in these items. Neither the private citizen, nor his residence, falls within the general purposes for which the legislation was enacted.
The Court of Appeals in People v Munoz (9 NY2d 51, 55) in discussing an ordinance of the City of New York, stated "This is a broad enactment designed to meet a limited though serious evil. Its validity depends not upon the object toward which it is directed but on the method by which it is sought to be attained. We shall first consider appellant’s point that it is void for uncertainty. 'Statutes which create crimes must be definite in specifying conduct which is condemned or prohibited. They must afford some comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements.’ [Cases cited.] The vice in statutory law of this nature is that it conceals what persons are included and what acts are prohibited. (United States v. Cardiff, 344 U. S. 174). As was remarked by Mr. Justice Frankfurter in Winters v. New York (333 U. S. 507, 540): 'Definiteness is designedly avoided so as to allow the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of police and prosecution, although not chargeable with any particular offense.’ ” (Emphasis added.)
Therefore, it is this court’s opinion that subdivision 1 of section 96 is unconstitutionally vague, in that it does not give a reasonable man sufficient notice of what is prohibited and what is permitted. As stated earlier, a statute which restricts one’s freedom of action in the name of the police power, to be constitutional must bear some relation to the public good. Control of private residents not involved in sales, distribution and manufacture of alcoholic beverages bears no relation to the public good. A statute which fails to distinguish between innocent conduct and action which is calculated to cause harm may not be sustained. Laws which create crimes ought to be so explicit that all men subject to their penalties may know *397 what acts it is their duty to avoid. Subdivision 1 of section 96 does not provide the reasonable man in our society with a comprehensible guide, or rule, to determine what is lawful and what is not.
Moreover, the language "No alcoholic beverage shall be stored or kept in or upon any premises which shall not be duly licensed” is so broad that it covers all premises in this State, where alcoholic beverages may be found, regardless of amount and regardless of the intent and object of the one storing such beverage. Such language is impermissibly vague in that it provides no guidelines for its enforcement. The statute does not direct itself to a prohibited amount nor, perhaps more importantly, does it direct itself to the intent or object of the individual in storing such beverage. Further, it does not restrict its application to certain types of premises.
If the draftsmen of this section had included the storage of alcoholic beverages with the intent to sell, distribute or manufacture, or had more definitely defined the types of premises to be included, there would be less difficulty in sustaining its validity.
The enforcement of this section and the objects of its scorn are left up to the whims and caprice of any law enforcement agency, with no real guidelines as to what conduct is unlawful and prohibited. This section could be used as a basis to obtain search warrants of private residents upon allegations that probable cause exists that the occupant is merely storing an alcoholic beverage in his home regardless of the amount, or the occupant’s intent. This cannot be allowed, in light of the stated purposes within which this section is contained.
While the court is constrained in the instant case to dismiss this charge based upon the unconstitutionality of subdivision 1 of section 96, it is of the opinion that some note must be made of the language of subdivision 1 of section 96 so that with revision the intent of this section may be used legitimately by State and local agencies to control the storage of alcoholic beverage, by language which clearly defines what is prohibited and what is not and by defining who is prohibited and who is not and by defining where it is prohibited and where it is not.
Therefore, based upon the foregoing, the defendant’s conviction is vacated and the charges dismissed.