MARYANN POTTS, Plaintiff-Appellee, v. THE DEPARTMENT OF REGIS-
TRATION AND EDUCATION *et al.*, Defendants-Appellants.

Fourth District   No. 4—85—0802

Opinion filed July 15, 1986.—Rehearing denied August 29, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and William D. Frazier, Assistant Attorney General, both of Chicago, and Michael Vujovich, Assistant Attorney General, of Springfield, of counsel), for appellants.

James T. Londrigan and Timothy J. Londrigan, both of Londrigan & Londrigan, of Springfield, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

This cause involves a permissive interlocutory appeal. (87 Ill. 2d R. 308(a).) The State of Illinois Department of Registration and Education (Department) denied plaintiff Maryann Potts' application for licensure as a naprapath under the Medical Practice Act (Act) (Ill. Rev. Stat. 1983, ch. 111, par. 4401 et seq.). The Department found as a matter of law that the Act did not provide for licensure of naprapaths. Plaintiff filed a complaint for administrative review, and the circuit court reversed the Department's decision, ordering the Department to hold hearings to determine whether naprapathy was a system of treating human ailments under the Act. It granted the Department's motion to certify the following questions for review:

"1. Whether the Department of Registration and Education erred in its interpretation of the *Medical Practice Act*, Ill. Rev. Stat. ch. 111, sec. 4401 *et seq.* (1983) in ruling that sec. 4411(2)(b) provides for licensure of only chiropractors, thereby excluding Naprapaths and others as persons seeking licensure to practice 'any system or method of treating human ailments without the use of drugs or medicines and without operative surgery'?

2. Whether the Department of Registration and Education has the authority to conduct hearings and to make determinations concerning whether the system or method of treating human ailments known as Naprapathy is the practice of medicine under the Medical Practice Act and existing law."

This court allowed the Department's motion for interlocutory review. For the following reasons, we find the Department erred in its interpretation of the Act but that it is unnecessary for it to conduct hearings to determine whether naprapathy is a system of treating human ailments recognized under the Act, and the answer to the first question certified to this court is yes.

The basic question before this court is one of statutory construction. It is axiomatic that when reviewing statutory provisions, the courts ascertain the legislative intent and effectuate it if possible. (*Dornfeld v. Julian* (1984), 104 Ill. 2d 261, 266, 472 N.E.2d 431, 432.) The entire statute is examined in this process, and the court will seek to determine the objective the statute sought to accomplish. *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 473 N.E.2d 1313.

The starting point of the court in ascertaining legislative intent is the language of the statute. (*Ernst & Ernst v. Hochfelder* (1976), 425 U.S. 185, 47 L. Ed. 2d 668, 96 S. Ct. 1375, *rehearing denied* (1976), 425 U.S. 986, 48 L. Ed. 2d 811, 96 S. Ct. 2194.) Generally, the words of a statute are given their ordinary and popular meaning. If the words are plain and unambiguous, they must be given effect as they appear in the statute. The court should not attempt to read the statute other than in the manner in which it was written; nor in applying the statutory language is it necessary to search for any subtle or not readily apparent intention of the legislature. The court cannot read into the statute words which are not within the plain intention of the legislature as determined by the statute itself. *Kozak v. Retirement Board* (1983), 95 Ill. 2d 211, 215-16, 447 N.E.2d 394, 396-97.

Each word, clause, or sentence of a statute should be given some reasonable meaning if possible. (*Kozak v. Retirement Board* (1983), 95 Ill. 2d 211, 447 N.E.2d 394.) The court must give effect to as much of the statute as possible consistent with constitutional principles. (*Dornfeld v. Julian* (1984), 104 Ill. 2d 261, 472 N.E.2d 431.) The legislature is presumed to know the judicial construction of a statute. (*Kozak v. Retirement Board* (1983), 95 Ill. 2d 211, 447 N.E.2d 394.) Reenactment of the statute is, therefore, presumed to be an adoption of prior judicial construction. *People v. Palmer* (1984), 104 Ill. 2d 340, 349, 472 N.E.2d 795, 800; *Williams v. Crickman* (1980), 81 Ill. 2d 105, 111, 405 N.E.2d 799, 802.

Courts will also give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Com.* (1983), 95 Ill. 2d 142, 152, 447

N.E.2d 295, 300; *Mattson v. Department of Labor* (1983), 118 Ill. App. 3d 724, 727, 455 N.E.2d 278, 281.) Agency interpretation of statutes which they enforce is a persuasive indication of legislative intent. (*Illinois Consolidated Telephone v. Illinois Commerce Com.* (1983), 95 Ill. 2d 142, 447 N.E.2d 295.) However, the courts are not bound by administrative statutory interpretations. *Illinois Consolidated Telephone v. Illinois Commerce Com.* (1983), 95 Ill. 2d 142, 447 N.E.2d 295; *Quincy School District No. 172 v. Board of Review* (1984), 129 Ill. App. 3d 93, 98, 471 N.E.2d 1056, 1059.

With the above principles in mind, we review the pertinent sections of the Act. (Ill. Rev. Stat. 1983, ch. 111, par. 4401 *et seq.*) We note that portions of the 1983 Act have been amended, but the language under consideration in the instant case was not amended. Section 2 states:

"No person shall practice medicine, or any of its branches, or midwifery, *or any system or method of treating human ailments without the use of drugs or medicines and without operative surgery,* without a valid, existing license to do so." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 111, par. 4403.)

Section 4 states in part:

"Each applicant for such examination shall:
* * *

3. Designate specifically the name, location, and kind of professional school, college, or institution of which he is a graduate and the system or method of treatment under which he seeks, and will undertake, to practice; * * *." (Ill. Rev. Stat. 1983, ch. 111, par. 4410.)

Section 5 states in part:

"[T]he minimum standards of professional education to be enforced by the department in conducting examinations and issuing licenses shall be as follows:
* * *

2. Treating human ailments without drugs or medicines and without operative surgery. *For the practice of any system or method of treating human ailments without the use of drugs or medicines and without operative surgery*:

(a) For an applicant who was a resident student and who is a graduate before July 1, 1926, of a professional school * * *.

(b) For an applicant who was a resident student and who is a graduate after July 1, 1926, of a professional school, college or institution which taught the system or method of treating human ailments which he specifically designated in his application as the one which he would undertake to practice, that such

school, college or institution at the time of his graduation required as a prerequisite to admission thereto a 4 years' course of instruction in a high school, and as a prerequisite to graduation therefrom a course of instruction in the treatment of human ailments, of not less than 132 weeks in duration and shall have been completed within a period of not less than 35 months *** such high school and such school, college or institution having been reputable and in good standing in the judgment of the department." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 111, par. 4411.

Section 9 states that the Department shall examine applicants seeking a license to practice any system or method of treating human ailments. The examination shall be the same as required of those seeking to practice medicine generally. However, it shall exclude *materia medica*, therapeutics, surgery, obstetrics, and theory and practice. The statute also provides that the examination shall be such as in the judgment of the Department will determine the qualifications of the applicant to practice his particular system or method. Ill. Rev. Stat. 1983, ch. 111, par. 4417.

Section 11 provides that the Department shall issue an appropriate license to applicants who successfully pass their examinations. Applicants may be licensed to practice medicine in all of its branches or to treat human ailments without the use of drugs or medicines and without operative surgery. Ill. Rev. Stat. 1983, ch. 111, par. 4421.

The Department states that from the inception of the Act, it interpreted the language "any system or method of treating human ailments" as used in section 5 of the Act as meaning osteopathy and chiropracty. In 1955, the court determined that osteopaths should be licensed to practice in all branches of medicine. (*Chicago College of Osteopathy v. Puffer* (1955), 5 Ill. 2d 441, 126 N.E.2d 26.) After the *Puffer* decision, the Department maintains that it interpreted the language as providing solely for licensure of practitioners of chiropractic medicine. Relying upon the principle that consistent agency interpretation is entitled to great weight, the Department argues this court should adopt its interpretation and restrict the plain language of section 5(2)(b) of the Act to chiropractors.

The dictionary defines the word "any" as: "one or some indiscriminately of whatever kind: *** one or another taken at random." (Webster's Ninth New Collegiate Dictionary 93 (1986).) Thus, the language "any system or method of treating human ailments," which is used in section 5(2)(b), (Ill. Rev. Stat. 1985, ch. 111, par. 4411(2)(b)), is not restrictive in nature. We note that this same language is used throughout

the statute. If the language is interpreted in its ordinary fashion, licensure as a drugless practitioner cannot be restricted only to chiropractors. A reviewing court should not read restrictions into a statute or read the language in a strained manner to restrict its ordinary import. The language is not ambiguous. This court need not look for a subtle intention of the legislature to restrict the ordinary import of the unambiguous language. *Kozak v. Retirement Board* (1983), 95 Ill. 2d 211, 447 N.E.2d 394.

■ Adopting the Department's argument that the words "any system" means chiropractic medicine would unduly restrict the language of the statute. This we decline to do. This court is not bound by an erroneous interpretation of a statute by an administrative agency, regardless of the period of time in which the agency has been following its interpretation. (*Quincy School District No. 172 v. Board of Review* (1984), 129 Ill. App. 3d 93, 471 N.E.2d 1056.) Therefore, we find the Department erred in its interpretation of the Act.

The sections quoted provide ample basis for the formulation of examinations and testing of naprapaths who graduate from schools recognized by the Department. The Department should not refuse recognition on an arbitrary basis. We note that the record establishes that the school from which plaintiff graduated is chartered by the State and authorized to issue a doctorate of naprapathy.

The conclusion that the Department erred in unduly restricting the language of section 5(2)(b) is supported by two early judicial interpretations of the Act. In 1924, in *People v. Witte* (1924), 315 Ill. 282, 146 N.E. 178, the court held the 1923 act was constitutional as it applied to a naprapath. Witte had been convicted of practicing naprapathy without a license. The court noted that the purpose of the General Assembly was to protect the public, and it did this by licensing and regulating only those who were qualified to practice their medical skills. The underlying premise of the case was that naprapathy was a "system or method" within the purview of the act. Therefore, absent a constitutional infirmity within the act, defendant was properly convicted of practicing naprapathy without a license.

The court found the act was constitutional and stated:

"The General Assembly, in framing the Medical Practice act, was confronted by the necessity of applying its provisions to the schools of medicine or medical practice now existing and to those which might arise from time to time. It was impossible to formulate a statute with particular reference to each. A plan of regulation was provided in a single, comprehensive enactment applicable alike to all schools, present and future. The plan di-

vides licenses, (Cahill's Stat. 1923, sec. 11, pp. 2214, 2215,) so far as physicians are concerned, into two classes, one of which confers the right to practice medicine in all of its branches, and the other to treat human ailments without the use of drugs or medicines and without operative surgery, the licensee under such a license to be restricted by its terms to the practice of the system or method which he specifically designated in his application as the one he would undertake to practice." 315 Ill. 282, 285-86, 146 N.E. 178, 180.

In *People v. Barnett* (1926), 240 Ill. App. 357, after a bench trial, the defendant was convicted of engaging in the treatment of human ailments without a license. On appeal, the defendant conceded that he did not have a license but argued that the act did not provide for licensure of naprapaths. The court rejected defendant's argument and held, after reviewing the act, that there was ample provision under the law for the examination and licensure of those desiring to practice naprapathy. Therefore, it found defendant guilty of violating the act by practicing naprapathy without a license.

The legislature has reenacted the disputed language many times since *Witte* and *Barnett* and has not eliminated or altered the language "any system or method of treating human ailments," the construction of which it was presumptively aware. (*Kozak v. Retirement Board* (1983), 95 Ill. 2d 211, 447 N.E.2d 394.) Reenactment of the statute is an adoption of the prior judicial construction. (*Williams v. Crickman* (1980), 81 Ill. 2d 105, 405 N.E.2d 799.) We note that the legislature had ample opportunity to adopt the Department's interpretation of the Act by simply substituting the words "chiropractic medicine" for the words "any system or method of treating human ailments without the use of drugs or medicines and without operative surgery" in section 5. (Ill. Rev. Stat. 1983, ch. 111, par. 4411(2).) However, it has not substantively changed the phrasing of the section.

■ Since the *Barnett* court recognizes naprapathy as a system of treating human ailments within the purview of the Act, it is unnecessary for the Department to hold hearings to determine whether naprapathy is a system of treating human ailments.

We, therefore, answer the second question certified to this court in the negative and remand to the circuit court for further proceedings consistent with this disposition.

Affirmed in part, reversed in part, and remanded.

MORTHLAND and SPITZ, JJ., concur.