(No. 64215.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. SUSAN ROOS, Appellee.

*Opinion filed October 5, 1987.*

204

WARD, MORAN and CUNNINGHAM, JJ., took no part.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Mark L. Rotert and David E. Bindi, Assistant Attorneys General, of Chicago, of counsel), for the People.

Thomas A. Briscoe, of Will & Briscoe, of Waukegan, for appellee.

JUSTICE RYAN delivered the opinion of the court:

The defendant, Susan Roos, an acupuncturist, was charged with practicing medicine without a license. The defendant moved to dismiss the complaint on the ground that the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4401 et seq.) is unconstitutional as applied to the practice of acupuncture. The circuit court of Lake County agreed, and granted the motion to dismiss. A direct appeal to this court was taken pursuant to Rule 302(a) (107 Ill. 2d R. 302(a)).

On August 30, 1985, a two-count misdemeanor complaint was filed in the circuit court of Lake County charging the defendant with the "unlawful practice of medicine" in violation of section 25 of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4460). The charges stemmed from the fact that the defendant, who is not a licensed physician, engaged in the practice of acupuncture without applying for a license from the Department of Registration and Education. At the bench trial, it was stipulated that if called, John Germain, an investigator for the Department of Registration and Education, would testify that he twice received acupuncture treatments from the defendant. The acupuncture treatments consisted of the insertions of needles into various locations of the agent's body. At the hearing on the motion to dismiss, the defendant admitted that she was engaged in the practice of acupuncture. She further testi-

fied that she received her training in acupuncture at the Midwest Center for the Study of Oriental Medicine in Chicago and from the Shanghai College of Traditional Chinese Medicine in Shanghai, China. The defendant received certificates from both institutions; however, she did not have a license from the Department of Registration and Education to practice acupuncture.

The defendant moved to dismiss the charge of practicing medicine without a license on the ground that the Medical Practice Act is unconstitutional as applied to acupuncture. The defendant asserted at trial, and argues here, that the Department of Registration and Education refuses to license acupuncturists. She therefore contends that acupuncturists must be graduates of medical school in order to practice acupuncture. The defendant further contends that there is no rational basis for allowing graduates of Western medical schools, who have no training in the field, to practice acupuncture, while denying this right to those who have acupuncture training but have not graduated from a Western school of medicine.

The circuit court granted the defendant's motion and held that the application of the Medical Practice Act to the practice of acupuncture is unconstitutional under the fourteenth amendment. The circuit court noted that although acupuncture does not derive from Western medicine and is not offered as a course of study in medical school, it falls within the scope of the Medical Practice Act and requires a medical degree as a prerequisite to practicing acupuncture. The circuit court held that the State's interest in requiring a certain degree of skill and learning in those practicing acupuncture is not rationally advanced by requiring a medical degree.

The Medical Practice Act contemplates two types of licenses: one authorizes the practice of medicine in all its branches, and the other permits the treating of human

ailments without the use of drugs or medicine and without operative surgery. The recipient of the limited license is restricted to the use of the method or system designated in his application. However, "the licensee authorized to practice medicine in all its branches may, without limitation, use any method or system for the treatment and healing of human ailments." *People v. McGinley* (1928), 329 Ill. 173, 178.

Section 2 of the Medical Practice Act provides, in pertinent part:

"No person shall practice medicine, or any of its branches, or midwifery, or any system or method of treating human ailments without the use of drugs or medicines and without operative surgery, without a valid, existing license so to do ***." Ill. Rev. Stat. 1985, ch. 111, par. 4403.

Section 5(1)(b) and section 5(2)(b) (Ill. Rev. Stat. 1985, ch. 111, pars. 4411(1)(b), (2)(b)) set out the minimum standards of professional education under the Act for the practice of medicine. Section 5(1)(b) applies to the practice of medicine in all of its branches and sets forth the educational requirements. Section 5(2)(b) applies to "treating human ailments without drugs or medicine and without operative surgery," and requires that the applicant be, a graduate "of a professional school, college or institution which taught the system or method of treating human ailments which he specifically designated in his application as the one which he would undertake to practice." (Ill. Rev. Stat. 1985, ch. 111, par. 4411(2)(b).) The circuit court concluded that the Act required medical school training as required by section 5(1)(b) before a person could practice acupuncture.

In holding the Act unconstitutional, the circuit court relied on *People v. Schaeffer* (1923), 310 Ill. 574. In *Schaeffer*, the defendant, an osteopath, was charged with performing surgery without a license as required under

the Act. The court in *Schaeffer* held the Medical Practice Act was unconstitutional as applied to osteopaths because one who was licensed to practice medicine and surgery in all of its branches would be able to practice osteopathy despite the fact that they may not have received any training in the profession. An osteopath, however, could not practice medicine unless he also had a medical school degree.

The circuit court analogized the case at bar to the situation of *Schaeffer*. The court noted that under section 5(1)(b) an acupuncturist is required to study irrelevant theories of Western medicine before he may practice acupuncture, while the graduate of a medical school is not required to study acupuncture and may practice acupuncture without any further training. The court found no rational basis for these requirements, and thus invalidated the statute as applied.

We disagree with the trial court's determination and reverse. We base our decision on statutory interpretation rather than constitutional grounds. Because we find, as a matter of statutory interpretation, the Act does not require acupuncturists to have a medical degree under section 5(1)(b) of the Act, we do not reach the question of whether such a requirement could be constitutionally imposed.

Regulation of the practice of medicine in the State of Illinois is governed by the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4401 *et seq.*). Squarely presented then is the question of whether acupuncture constitutes the practice of medicine. Before discussing this issue, it may prove useful to review some background of the practice of acupuncture. The history, philosophy, and techniques of the ancient Chinese practice of acupuncture have been described as follows:

> "The practice of acupuncture apparently dates back to the third or fourth century B.C. [Citation.] It consists of

the insertion and manipulation of fine, stainless steel needles in specific areas of the surface of the skin. [Citation.] Today acupuncture is used to treat a great variety of diseases, as well as emotional disorders. It has been used to alter both the perception of pain (acupuncture analgesia) and to treat certain dysfunctions (acupuncture therapy)." Note, *The Decision to Undergo Acupuncture Treatment: An Expansion of the Right of Privacy*, 18 Hous. L. Rev. 373, 377 n.34 (1981).

The defendant asserts that acupuncture is not a field which comes within Western medical concepts and, therefore, it does not fall within the definition of practicing medicine under the Act. This argument, however, was specifically rejected in *People v. Amber* (1973), 76 Misc. 2d 267, ____, 349 N.Y.S.2d 604, 611. In *Amber*, the court noted that the definition of medicine under the statute includes the " 'diagnosing, treating, operating or prescribing for any human disease, pain, injury, deformity or physical condition' " (76 Misc. 2d 267, ____, 349 N.Y.S.2d 604, 611), and therefore the definition is not limited to Western medicine. Similarly, nothing under the Illinois Medical Practice Act indicates that it is limited to Western medicine. Moreover, numerous other jurisdictions confronted with this issue have held that acupuncture constitutes the practice of medicine. See, *e.g.*, *Andrews v. Ballard* (S.D. Tex. 1980), 498 F. Supp. 1038; *Acupuncture Society v. Kansas State Board of Healing Arts* (1979), 226 Kan. 639, 602 P.2d 1311.

Although the circuit court acknowledged that acupuncture falls within the scope of the Medical Practice Act, as stated above, it held that the Act was unconstitutional as applied to acupuncturists. This court, however, has frequently stated there is a strong presumption that legislative enactments are constitutional (*People v. Greene* (1983), 96 Ill. 2d 334, 338), and one who asserts otherwise has the burden of clearly establishing the con-

stitutional violation (*Sayles v. Thompson* (1983), 99 Ill. 2d 122, 125). Moreover, a statute should be interpreted to avoid a construction which would raise doubts as to its validity. *Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 363.

The meaning of a statute depends upon the intent of its drafters, and it is the court's duty to ascertain and effectuate that intent. (*In re Griffin* (1982), 92 Ill. 2d 48, 52.) The words of a statute are given their ordinary and popular meaning if the words are clear and unambiguous. (*Potts v. Department of Registration & Education* (1986), 145 Ill. App. 3d 960, 962.) Section 2 of the Medical Practice Act provides:

> "No person shall practice medicine, or any of its branches, or midwifery, or *any* system or method of treating human ailments without the use of drugs or medicines and without operative surgery, without a valid, existing license so to do ***." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 111, par. 4403.

The plain language of section 2 indicates that the drafters intended that practitioners of medicine, midwifery, or *any* system or method of treating human ailments have a license. Section 2 provides for licensing of "any system or method of treating human ailments *without the use of drugs or medicine and without operative surgery*" (emphasis added) (Ill. Rev. Stat. 1985, ch. 111, par. 4411(2)(b)), and section 5(2) specifies the educational requirements for such practice. Because acupuncture does not involve the use of drugs or medicine, the question becomes whether acupuncture constitutes operative surgery within the meaning of the Act. If acupuncture constitutes operative surgery then the requirements of section 5(1) must be met. If, however, acupuncture does not constitute operative surgery then acupuncturists can be licensed under section 5(2) and a medical degree is not necessary.

The Act does not define the term "operative surgery," therefore the rules of statutory construction apply. A basic rule of statutory construction is that when reviewing statutory provisions, courts should ascertain the legislative intent and effectuate it if possible. (*Dornfield v. Julian* (1984), 104 Ill. 2d 261, 266.) "Generally, the words of a statute are given their ordinary and popular meaning." (*Potts v. Department of Registration & Education* (1986), 145 Ill. App. 3d 960, 962.) Surgery has been defined as a "branch of medicine dealing with the diagnosis and treatment of those diseases, injuries and disorders which require manual adjustment (as the setting of a broken bone), the use of mechanical appliances (as braces), or operative procedures (as the cutting into the body)." (3 J. Schmidt, Attorney's Dictionary of Medicine (1986).) Schmidt's dictionary further defines "operative surgery" as "surgery requiring incision or cutting (as opposed to manipulation)." Because each word, clause, or sentence of a statute should be given effect if possible (*Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211), the distinction between the definition of surgery and operative surgery should be given effect. The definition of "surgery" is much broader than "operative surgery" and we are forced to conclude the legislature intended the more limited meaning of surgery "as incision or cutting" and not mere manipulation. "The simple piercing of the skin by the insertion of a solid wire or needle, not intended to separate or sever tissue, for the purpose of treating by acupuncture is not 'surgery' ***." *Acupuncture Society v. Kansas State Board of Healing Arts* (1979), 226 Kan. 639, 646, 602 P.2d 1311, 1315.

We conclude that acupuncture does not constitute "operative surgery" within the meaning of the Act. Accordingly, those who wish to practice acupuncture may obtain a limited license under section 5(2). As previously

noted, licensure under section 5(2) does not require graduation from medical school; therefore, the irrationality identified by the circuit court does not exist.

The second possible basis for the circuit court's conclusion that a medical degree is necessary under the Act may stem from an interpretation by the Department of Registration and Education that the Department lacks "statutory authority to *specifically regulate* or *issue authorizations* for the practice of acupuncture." (Emphasis added.) 4 Ill. Reg. 230 (Dec. 5, 1980).

The Department repealed its rule which permitted granting "authorizations" to practice acupuncture because it was objected to by the Joint Committee on Administrative Rules of the Illinois General Assembly. (5 Ill. Reg. 7527 (July 17, 1981).) The Joint Committee on Administrative Rules' objection to the Department's regulating acupuncture was with the manner in which the Department attempted to regulate. The Department attempted to specifically regulate acupuncture by issuing authorizations. The Committee objected to "authorizations" because the Medical Practice Act does not permit "authorizations" but only allows the Department to issue "licenses." 4 Ill. Reg. 230 (Dec. 5, 1980).

Although courts give substantial weight and deference to an interpretation of a statute by the agency charged with the administration and enforcement of the statute, such interpretations are not binding on the courts. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Com.* (1983), 95 Ill. 2d 142.) Thus, even if the Department of Registration and Education stated it did not have the authority to issue licenses to acupuncturists, that determination would not be dispositive. In *Potts v. Department of Registration & Education* (1986), 145 Ill. App. 3d 960, the Department erroneously interpreted the Medical Practice Act and concluded that limited licenses could only be issued to chiropractors, not

naprapaths. The appellate court held that the language of section 2 could not be limited to provide for licensing of only chiropractors. Moreover, in *People v. Witte* this court stated that:

> "The General Assembly, in framing the Medical Practice act, was confronted by the necessity of applying its provisions to the schools of medicine or medical practice now existing and to those which might arise from time to time. It was impossible to formulate a statute with particular reference to each." *People v. Witte* (1924), 315 Ill. 282, 285-86.

The defendant asserted, and the circuit court apparently agreed, that acupuncture does not come under section 2 because acupuncture is not Western medicine. As previously noted, the Act does not in any way indicate that it is limited to Western medicine and we are not prepared to interpret it that way.

In conclusion, we hold that the Medical Practice Act does not require acupuncturists to have a medical degree. There is ample provision under section 5(2) for the examination and licensure of those desiring to practice acupuncture. Although we do not reach the issue of whether requiring acupuncturists to be medical doctors can be constitutionally imposed, we note that several courts have upheld such requirements. (See, *e.g.*, *Louisiana State Board of Medical Examiners v. Moran* (La. App. 1974), 290 So. 2d 383; *Kelley v. Raguckas* (1978), 84 Mich. App. 618, 270 N.W.2d 665; *People v. Amber* (1973), 76 Misc. 2d 267, 349 N.Y.S.2d 604; *State v. Wilson* (1974), 11 Wash. App. 916, 528 P.2d 279.) Also, the legislature, if it deems it appropriate, may provide specific licensing requirements for acupuncturists as it did for chiropractors in sections 5(2)(c), (2)(d) and (2)(e). However, unless and until specific provisions are made by the legislature, acupuncturists may be licensed under

the broad provisions of section 5(2) of the Medical Practice Act.

The record discloses that the defendant was engaged in the practice of acupuncture without a license. No defenses, however, were raised in the trial court to the charges of practicing medicine without a license, and none are foreclosed by this decision.

We therefore reverse the judgment of the circuit court of Lake County and remand this case to that court for further proceedings.

*Reversed and remanded.*

WARD, MORAN, and CUNNINGHAM, JJ., took no part in the consideration or decision of this case.