THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS FABING, Defendant-Appellant.

First District (1st Division)   No. 1—88—1492

Opinion filed March 26, 1990.

---

Warsawsky, McNeal, Fabing & Associates, of Chicago (Michael D. Fabing and Elizabeth A. Knospe, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and David Butzen, Assistant State's Attorneys, of counsel), for the People.

Cassiday, Schade & Gloor, of Chicago (Michael J. Gallagher, Gregory E. Schiller, and Patricia A. Bove, of counsel), for *amicus curiae* Chicago Herpetological Society.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Thomas Fabing (defendant) was charged by misdemeanor complaint with four counts of possessing "life-threatening" reptiles in violation of section 1 of the Illinois Dangerous Animals Act (the Act) (Ill. Rev. Stat. 1987, ch. 8, par. 241). Following a bench trial, defendant was found guilty of the charged offenses and fined $100.

Defendant appeals his conviction, contending that (1) the Act is

unconstitutional on its face and as applied in this case and (2) the State failed to prove the reptiles "life-threatening" beyond a reasonable doubt. We reverse.

The State presented the following evidence at trial. On October 1, 1987, a search warrant was issued authorizing a search of defendant's residence, located at 9410 South Ewing in Chicago, for the seizure of an alligator and two python snakes. Louis Morgan, an Illinois Department of Agriculture animal welfare inspector, and Chicago police officers executed the warrant and seized two Burmese python snakes, approximately 20 feet in length, one boa constrictor snake, approximately seven feet in length, and an American alligator, approximately four feet in length.

Morgan testified that he examined the enclosure where the pythons were kept and detected holes in the screen large enough for the animals to crawl out. Defendant informed Morgan that on a couple of occasions the snakes escaped his apartment and were subsequently found in the alley behind the apartment building. On cross-examination, Morgan testified that according to a Department of Agriculture ruling, a copy of which was not introduced into evidence, any snake which by nature constricts its prey and is over six feet in length is considered "life-threatening."

Charles Hill, senior keeper of the reptile house at the Lincoln Park Zoo in Chicago, testified as an expert witness for the State. He testified that the python and boa constrictor snakes are species of "giant snakes"[1] and that a python in the wild, which is comparable in size to defendant's pythons, is capable of eating a small antelope. Hill described constricting snakes as wild, dangerous and unpredictable animals. According to Hill, even snakes that have become tame and docile through human handling can become violent and dangerous. In Hill's opinion, any constrictor snake over 10 feet in length is life-threatening because of its potential power to suffocate a human.

Hill opined that defendant's snakes were life threatening because the pythons were capable of killing an adult or child and the boa constrictor was capable of killing a child or an infant. Apart from Hill's awareness of a single case in St. Louis where a person had been killed by an African python snake, he was unaware of any reliable accounts of "giant" constricting snakes killing humans.

Hill testified that defendant also possessed a four-foot American alligator.

---

[1]The boa constrictor, the Burmese and Indian python, the reticulated python, the African rock python, and the anaconda comprise the "giant-snake" category.

The following witnesses testified on behalf of defendant. Dr. Michael Corn, a biology professor at College of Lake County, testified as an expert witness. Dr. Corn stated that a "life-threatening reptile is one that can kill someone or is likely to kill somebody" and that the snake's attitude, behavior and aggressiveness are more important than its size. In his opinion, defendant's boa constrictor, which was approximately eight feet in length and weighing 25 pounds, and defendant's two Burmese pythons, approximately 16 feet in length and weighing 100 pounds each, were not life-threatening within the meaning of the statute because they are docile. Defendant's boa constrictor snake, like other boas, was too small to be considered life-threatening.

Corn further testified that a 15- or 18-foot Burmese python could potentially kill somebody, but such an occurrence would be unlikely since pythons do not constrict on people and the python would have to suffocate the person. Although wild constricting snakes may be "mean," they become tame through human handling, and docile snakes often do not attack and are not a threat to humans. Pythons, though, will kill and eat things they can get into their mouth, and a python approximately 19 feet in length could "probably [eat] something the size of a small pig." A snake which is fed smaller animals would probably not attempt to attack something as large as a 50-pound pig because the snake becomes accustomed to a particular kind and size of food. On cross-examination, Dr. Corn testified that snakes 15 to 18 feet in length are large enough to kill a human by suffocation, including a small child or infant, although it could not swallow and consume the person. He testified that defendant's boa constrictor snake was incapable of killing an infant, but that it was possible for the snake to mistake a human arm or foot with its prey and begin constricting.

Dr. Corn further testified that he was aware of two newspaper reports where Burmese pythons were found in the same room of individuals who were killed by suffocation. The only other accounts of pythons killing humans that he was aware of were in a publication on reptiles.

As to defendant's four-foot alligator, Dr. Corn testified that it was not life-threatening because it was less than eight feet in length and because alligators tame "fairly nicely."

Defendant testified that his reptiles are docile and that they have never bitten anybody. He stated that between 50 and 500 people, including children, have handled the snakes and have never been bitten. Both defendant and his girlfriend, Rosemary Moore, handle the

snakes daily during "play time" and have had frequent trips with the snakes to local parks and at swimming pool parties, where the snakes are permitted to swim with children. The snakes have never attempted to strike at any of the other household pets, which include a pit bull, a terrier, two ferrets and a cockatiel.

Defendant also testified that he possessed a caiman and he and his brother, David, petted the caiman regularly. Defendant testified that the caiman was kept in a 200-gallon aquarium in his backyard and that it never threatened anybody.

Rosemary Moore testified in substantially the same manner as defendant.

On appeal, defendant first contends that the Act, on its face, is void for vagueness because its prohibitions are not clearly defined and therefore it violates the due process clause of the United States Constitution (U.S. Const., amend. XIV) and the Illinois Constitution (Ill. Const. 1970, art. I, §2).[2] Section 1 of the Act provides the following, in pertinent part:

> "No person shall have a right of property in, keep, harbor, care for, act as custodian of or maintain in his possession any dangerous animal except at a properly maintained zoological park, federally licensed exhibit, circus, scientific or educational institution, research laboratory, veterinary hospital or animal refuge in an escape-proof enclosure." (Ill. Rev. Stat. 1987, ch. 8, par. 241.)

"Dangerous animal" is defined by the Act as follows:

> " 'Dangerous animal' means a lion, tiger, leopard, ocelot, jaguar, cheetah, margay, mountain lion, lynx, bobcat, jaguarundi, bear, hyena, wolf or coyote, or any poisonous or *life-threatening reptile*." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 8, par. 240.)

Defendant claims that the term "life-threatening" in the above provision fails to afford a person of ordinary intelligence a reasonable opportunity to know what reptiles the Act prohibits and provides the State unreasonable and arbitrary discretion in enforcing the Act. In response, the State maintains that the term "life-threatening" is clear and comports with due process requirements. The State acknowledges that the term "life-threatening" is left undefined by the legislature, but asserts that the common meaning of the term, as it applies under the Act, denotes nonpoisonous reptiles that are "capable" and have

---

[2]The Chicago Herpetological Society was granted leave to file an *amicus curiae* brief relative to the constitutionality of the statute.

the "potential" danger of taking human life.

▉▉ ▉ Although this is the first case to test the constitutionality of the statute in question, the underlying principles involved are well settled. A statute is presumed to be constitutional and all reasonable doubts are to be resolved in favor of upholding the statute's validity. (*People v. Ortega* (1982), 106 Ill. App. 3d 1018, 1023, 436 N.E.2d 606, 610; *People v. McPherson* (1978), 65 Ill. App. 3d 772, 774-75, 382 N.E.2d 858, 860; see also *People v. La Pointe* (1981), 88 Ill. 2d 482, 499, 431 N.E.2d 344, 352.) One challenging the statute has the burden of clearly establishing the alleged constitutional violation. (*People v. Roos* (1987), 118 Ill. 2d 203, 514 N.E.2d 993; *People v. Bales* (1985), 108 Ill. 2d 182, 483 N.E.2d 517; *Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 395 N.E.2d 1376.) A court's primary consideration in construing a statute is to give effect to the legislature's intent by examining not only the language used in the statute, but also the reason for the law and the evil intended to be remedied. (*La Pointe*, 88 Ill. 2d at 499, 431 N.E.2d at 352; *People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305, 310, 242 N.E.2d 267, 270; *People v. Maya* (1985), 105 Ill. 2d 281, 287, 473 N.E.2d 1287, 1290; *People v. Boykin* (1983), 94 Ill. 2d 138, 141, 445 N.E.2d 1174, 1175; *McPherson*, 65 Ill. App. 3d at 774-75, 382 N.E.2d at 860.) Whenever possible, each word, clause, or sentence of a statute should be given some reasonable meaning. *Roos*, 118 Ill. 2d 203, 514 N.E.2d 993; *In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 478 N.E.2d 326.

▉▉ Under the due process clause, a statute is void for vagueness if its prohibitions are not clearly defined. (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227-28, 92 S. Ct. 2294, 2298-99.) Criminal statutes are held to a higher standard than civil sanctions and must define the crime with "appropriate definiteness." (*Winters v. New York* (1948), 333 U.S. 507, 515, 92 L. Ed. 840, 849, 68 S. Ct. 665, 670.) Vagueness challenges to statutes must be made in the factual context of each case. *United States v. Mazurie* (1975), 419 U.S. 544, 550, 42 L. Ed. 2d 706, 713, 95 S. Ct. 710, 714.

▉▉ Two requirements must be met to withstand constitutional scrutiny under the vagueness doctrine. First, the penal statute must be clearly defined and give a person of ordinary intelligence a fair warning as to what conduct is proscribed. (*Grayned*, 408 U.S. at 108, 33 L. Ed. 2d at 227-28, 92 S. Ct. at 2298-99; *Bales*, 108 Ill. 2d at 188, 483 N.E.2d at 520; see also *People v. Schwartz* (1976), 64 Ill. 2d 275, 356 N.E.2d 8; *People v. Vandiver* (1971), 51 Ill. 2d 525, 283 N.E.2d 681; *DeGrazio v. Civil Service Comm'n* (1964), 31 Ill. 2d 482, 202 N.E.2d 522.) "[I]mpossible standards of specificity" are not required

(*People v. Dednam* (1973), 55 Ill. 2d 565, 567-68, 304 N.E.2d 627, 630), but a criminal statute must convey "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices" (*United States v. Petrillo* (1947), 332 U.S. 1, 8, 91 L. Ed. 1877, 1883, 67 S. Ct. 1538, 1542; see also *City of Decatur v. Kushmer* (1969), 43 Ill. 2d 334, 336, 253 N.E.2d 425, 426-27). Second, the statute must provide definite standards and guidance, so as to avoid arbitrary enforcement and application by police officers, judges, and juries. *Bales*, 108 Ill. 2d at 188, 483 N.E.2d at 520; see also *La Pointe*, 88 Ill. 2d at 499, 431 N.E.2d at 352.

■ In considering defendant's vagueness challenge under these principles, we find that the term "life-threatening" as contained in the Act fails to meet constitutional muster. In so finding, we reject the State's strained construction of the term "life-threatening" set forth above. The meaning of the term "life-threatening" is obscure at best. By failing to define the term "life-threatening," the legislature has effectively precluded a person of ordinary intelligence from knowing whether his reptiles are prohibited under the Act. The statutory language under which defendant is charged fails to draw reasonably clear lines between the types of reptiles that may be harbored without criminal repercussion. The statutory language here requires individuals to surmise as to the meaning of the sweeping term "life-threatening" and may trap the innocent by its lack of fair warning.

Moreover, that portion of the statute under which defendant was convicted is also constitutionally deficient because the term "life-threatening" permits arbitrary enforcement and application of the Act. The legislature has accorded law enforcement officials and triers of fact unfettered latitude in enforcing the Act rather than providing them some objective criteria by which to judge their actions. Legislatures may not so abdicate their responsibilities for setting the standard of the criminal law. *Papachristou v. City of Jacksonville* (1972), 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839.

In conclusion, we find the statutory language at issue here is void for vagueness. Defendant's conviction is reversed.

Based upon our findings above, we need not address defendant's remaining contentions on appeal.

Reversed and remanded.

CAMPBELL and MANNING, JJ., concur.